# United States Court of Appeals for the Federal Circuit

---

## IN RE NORDIC NATURALS, INC.

---

2013-1492

---

Appeal from the United States Patent and Trademark Office, Trademark Trial and Appeal Board in Serial No. 77131419.

---

Decided: June 23, 2014

---

MEREDITH M. WILKES, Jones Day, of Cleveland, Ohio, for appellant. With her on the brief was ANGELA R. GOTT.

NATHAN K. KELLEY, Deputy General Counsel for Intellectual Property Law and Solicitor, United States Patent and Trademark Office, of Alexandria, Virginia, for appellee. With him on the brief were KRISTI L. R. SAWERT and CHRISTINA J. HIEBER, Associate Solicitors. Of counsel was THOMAS L. CASAGRANDE, Associate Solicitor.

---

Before REYNA, WALLACH, and TARANTO, *Circuit Judges.*

REYNA, *Circuit Judge.*

This case is on appeal from the Trademark Trial and Appeal Board ("Board") at the United States Patent and Trademark Office. Appellant Nordic Naturals, Inc. ("Nordic") sought to register CHILDREN'S DHA, in

standard characters, for "nutritional supplements containing DHA." "DHA" is the abbreviation for docosahexaenoic acid, an omega-3 fatty acid that assists in brain development. The Board affirmed the examining attorney's rejection of the mark as generic or, in the alternative, as merely descriptive and lacking acquired distinctiveness. Because the Board's conclusion that the mark is generic is supported by substantial evidence, we affirm.

## BACKGROUND

Nordic filed U.S. Trademark Application Serial No. 77/131,419 seeking registration for CHILDREN'S DHA for nutritional supplements. During prosecution, Nordic agreed to disclaim the exclusive use of "DHA" apart from its use in the mark as a whole. J.A. 1998. It also clarified that the goods in question are "designed for use by children." J.A. 1989. The examining attorney finally rejected the mark as generic, or alternatively, as lacking acquired distinctiveness.

Nordic appealed to the Board. The Board found that the relevant goods were adequately defined by Nordic's description: "nutritional supplements containing DHA." The Board then found that the relevant public for these goods "consists of parents or other adults seeking nutritional supplements containing DHA for children." J.A. 8. With these definitions in mind, the Board reviewed the record evidence. The Board cited dictionary definitions of "child" and "DHA," and concluded that "children's DHA" merely described an essential fatty acid for children, without indicating a source. J.A. 10. The record also included third-party uses of "children's DHA" both to describe DHA products for children in general and children's DHA products other than Nordic's. Based upon this, the Board concluded that children's DHA "is the generic name for nutritional supplements containing DHA inasmuch as this wording encompasses nutritional

supplements containing DHA formulated for children." J.A. 22.

In the alternative, assuming the mark was not generic, the Board also considered whether it had acquired distinctiveness. J.A. 22-23. The Board acknowledged that Nordic has enjoyed commercial success with its products bearing the children's DHA label. Nevertheless, based upon "all the evidence of record," the Board concluded that the mark was not acting as a source identifier, and thus, had not acquired distinctiveness. J.A. 26.

## DISCUSSION

A mark is generic if the relevant public primarily uses or understands the mark to refer to the category or class of goods in question. *See, e.g.*, *Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 469 U.S. 189, 194 (1985) ("A generic term is one that refers to the genus of which the particular product is a species."). Because a generic term is "the common descriptive name of a class of goods," it cannot acquire distinctiveness and cannot be registered as a trademark. *H. Marvin Ginn Corp. v. Int'l Ass'n of Fire Chiefs, Inc.*, 782 F.2d 987, 989 (Fed. Cir. 1986); *see also Park 'N Fly*, 469 U.S. at 194; *In re Pennington Seed, Inc.*, 466 F.3d 1053, 1058 (Fed. Cir. 2006).

Whether a proposed mark is generic is a question of fact. *In re Hotels.com, L.P.*, 573 F.3d 1300, 1301 (Fed. Cir. 2009). The PTO must establish this fact with "clear evidence of generic use." *In re Merrill Lynch, Pierce, Fenner, & Smith, Inc.*, 828 F.2d 1567, 1571 (Fed. Cir. 1987) (quoting Trademark Manual of Examining Procedure § 1305.04 (1983)). On appeal, we must determine whether the Board's factual finding is supported by substantial evidence, taking into account the clear evidence standard. *Hotels.com*, 573 F.3d at 1302 ("When a fact is required to be found by 'clear evidence' and not a mere preponderance, the review for support by substantial evidence must take this heightened burden into

account."); *On-Line Careline, Inc. v. Am. Online, Inc.*, 229 F.3d 1080, 1085 (Fed. Cir. 2000) ("The substantial evidence standard requires the reviewing court to ask whether a reasonable person might find that the evidentiary record supports the agency's conclusion.").

Nordic does not argue that the Board misunderstood either the category of goods at issue or the relevant public. Thus, we adopt the Board's description of the relevant category of goods ("nutritional supplements containing DHA") and the relevant public ("parents or other adults seeking nutritional supplements containing DHA for children"). Nordic argues that the Board erred in its conclusion. We disagree.

The record includes the following evidence: dictionary definitions of both "child" and "DHA"; twelve third-party websites using "children's DHA" in relation to various DHA products for children; and online articles and book excerpts about nutrition that use "children's DHA" in a general, descriptive sense.

Nordic does not contest the substance of the dictionary definition cited by the Board. We agree with the Board that there is nothing in the definition of "child" and "DHA" that suggests "children's DHA" might identify the source of a product, rather than just describe the product. Rather, the definitions show that "children's" merely describes a category of DHA rather than indicating a source. The third-party websites relied upon by the Board further support this conclusion. These include the following generic uses of "children's DHA":

> A website selling Animal Parade's "DHA for Kids," which states "no other <u>children's DHA</u> supplement can match the ease and convenience of Animal Parade DHA."

J.A. 195.

> An article discussing DHA on wisegeek.com, which states: "<u>Children's DHA</u> is a dietary supplement available specifically for children. . . . There are a number of DHA and omega-3 supplements available of [sic] the market today, including <u>children's DHA</u> and DHA for pregnant women. . . . <u>Children's DHA</u> supplements can come in many forms, such as chewable tablets, gummies, or liquids. . . . When looking for <u>a children's DHA</u> supplement, experts agree that quality and safety are the most important factors. . . . Some scientists believe that the best <u>children's DHA</u> supplements are derived from flaxseed oil, or wild freshwater fish."

J.A. 1697-98.

> A website containing an article discussing DHA for children titled "<u>Children's DHA</u>, Supplements and Brain Development," which states "<u>children's DHA</u> is important in early development."

J.A. 1700-02.

> A website discussing children's nutrition, which states "another children's vitamin product offered by Shaklee is Mighty Smart, <u>a children's DHA</u> supplement."

J.A. 1785-86.

> An excerpt from the book *Prescription Alternatives* by Earl Mindell, available on Google Books, which states "Chewable <u>children's DHA</u> supplements are widely available."

J.A. 1360.

> A website selling NSI's "Omega Fishies for Kids," which describes the product as a "chewable <u>children's DHA</u> supplement."

J.A. 1346. Thus, the record includes numerous uses of "children's DHA" to describe the category of DHA products for children. *See, e.g.*, J.A. 1360, 1697-98, 1700-02. It also includes uses of "children's DHA" to describe various different DHA products for children, other than Nordic's. *See, e.g.*, J.A. 178-86, 195, 1346. This evidence supports the Board's conclusion that the relevant public primarily uses the phrase as it is defined in the dictionary, i.e., to generally describe DHA products formulated for children.

While Nordic admits that certain uses of "children's DHA supplement" on the record may be descriptive, it maintains that CHILDREN'S DHA by itself is not. Nordic supports this view by asserting that Nordic was the first to use CHILDREN'S DHA in 2000 and that, since then, it invested significant money and time in marketing its products with the use of this phrase. Nordic argues that its commercial success is based, in part, on its use of CHILDREN'S DHA to identify its product. For support, Nordic points to declarations from its retailers, its own advertising, and use of "children's DHA" by third parties to refer to Nordic's products. Based upon this evidence, Nordic argues that, as in *Merrill Lynch*, 828 F.2d at 1571, the record here includes a "mixture of usages," which cannot be clear evidence of genericness.

In *Merrill Lynch*, the applicant sought to register CASH MANAGEMENT ACCOUNT but the Board found it to be generic. This court reversed. Significantly, the record in *Merrill Lynch* "showed recognition in a substantial number of publications that the source of the CASH MANAGEMENT ACCOUNT was the appellant." *Merrill Lynch*, 828 F.2d at 1571. For example, third-party references on the record stated: "[t]he Cash-Management Account (CMA) pioneered by Merrill Lynch . . ."; "pioneered by Merrill Lynch's Cash Management Account and copied through the industry . . ."; and "with the highly successful Cash Management Account pioneered by

Merrill Lynch & Co." *Id.* at 1570. Because of the multiple third-party references that explicitly recognized Merrill Lynch as the source of the mark, the record lacked substantial evidence to support the Board's decision that the mark was generic. *Id.* at 1571.

Unlike *Merrill Lynch*, the record here does not reflect a mixture of usages for "children's DHA" among the relevant public. Here, there is a lack of third-party references recognizing Nordic as the source of "children's DHA." Instead, the record contains references that use this phrase in a generic and descriptive manner. Even certain references that use "children's DHA" to refer to Nordic's goods also use it to describe those goods in a generic manner. *See, e.g.*, J.A. 1732-33 ("Nordic Naturals Children's DHA is a small, chewable *children's DHA* supplement flavored with strawberry essence.") (emphasis added). Nor do the declarations submitted by Nordic undermine the Board's conclusion. Nordic obtained the declarations from retailers of its goods, not members of the relevant public. The declarations were prepared primarily by Nordic, with the declarants providing only personal information.[1] In contrast, the evidence in *Merrill Lynch* included unsolicited references to Merrill Lynch as the source of CASH MANAGEMENT ACCOUNT in news outlets such as Newsweek and Business Week. *Merrill Lynch*, 828 F.2d at 1571.

Thus, while Nordic may have been the first to use the phrase "children's DHA" in this market, the question remains, in light of Nordic's use and all other relevant uses, what does "children's DHA" primarily mean to the

---

[1] We are not suggesting that declarations of the sort submitted by Nordic cannot be used to support distinctiveness. It is simply that the record here, including the declarations, does not demonstrate the mixture of usages that were present in *Merrill Lynch*.

relevant public?  The evidence relied upon by the Board, and recited herein, constitutes sufficiently clear evidence that the relevant public uses "children's DHA" primarily to refer to the category of DHA products for children.

Because substantial evidence supports the Board's conclusion that "children's DHA" is generic, we do not address the parties' arguments regarding acquired distinctiveness.

**AFFIRMED**