This Opinion is Not a
Precedent of the TTAB

Mailed: May 13, 2015

UNITED STATES PATENT AND TRADEMARK OFFICE

_____

Trademark Trial and Appeal Board

_____

*In re Aloe Bioscience, LLC*

_____

Serial No. 85531266

_____

Edwin S. Flores and Jesica R. Flores of Chalker Flores, LLP,
    for Aloe Bioscience, LLC

Zachary B. Cromer, Trademark Examining Attorney, Law Office 104,
    Chris Doninger, Managing Attorney.

_____

Before Bergsman, Wellington and Kuczma,
    Administrative Trademark Judges.

Opinion by Kuczma, Administrative Trademark Judge:

Aloe Bioscience, LLC ("Applicant") seeks registration on the Supplemental

Register of the mark ALOE BIOSCIENCE (in standard characters) for:

> Dietary supplemental drinks containing aloe; electrolyte
> drinks for medical purposes containing aloe; dietary
> supplements containing aloe; nutritional supplements
> containing aloe; topical creams, liniments, jellies, liquids,
> lotions, salves, sprays, gels and ointments, all for the
> relief of aches and pains containing aloe; dermatologicals
> containing aloe; medicated skin care preparations,
> namely, gels, creams, lotions, ointments, balms,
> liniments, sprays, dressings, bandages and solutions for
> dermatological use in repairing skin, moisturizing skin,
> skin aging and elasticity problems, burns, itches, wounds,

sores, lack of hydration, skin disorders, wrinkles, brown spots and skin firmness containing aloe; medical preparations for skin and mouth care containing aloe; pharmaceutical preparations for wounds and for treating skin disorders containing aloe; medicated teeth bleaching and whitening preparations containing aloe; medicated toothpaste, mouthwash and healing gel for the mouth containing aloe; cosmeceuticals, namely, medicated skin care preparations containing aloe; health and beauty products, namely, medicated lotions, creams, gels and ointments for skin, face and mouth containing aloe, in International Class 5.[1]

After the refusal of registration was made final under Section 2(e)(1) of the Trademark Act, 15 U.S.C. § 1052(e)(1), Applicant filed a request for reconsideration which included an amendment to the Supplemental Register. The Trademark Examining Attorney subsequently refused registration of Applicant's mark on the ground that the mark is generic as to the goods and therefore incapable of distinguishing them from those of others under Section 23(c) of the Trademark Act, 15 U.S.C. § 1091(c).

In response to the final refusal to register under Section 23 of the Trademark Act, Applicant submitted a Notice of Appeal and a second request for reconsideration which was denied. Applicant then filed its Appeal Brief and a third request for reconsideration. After denial of the further requests for reconsideration, the appeal was resumed, and Applicant was afforded an opportunity to file a supplemental brief. After the timely filing of Applicant's Supplemental Brief, the

---

[1] Application Serial No. 85531266 was filed on February 1, 2012, based upon Applicant's allegation of a *bona fide* intention to use the mark in commerce under Section 1(b) of the Trademark Act, 15 U.S.C. § 1051(b); on May 6, 2013, the application was amended to allege use and Applicant also sought registration on the Supplemental Register under Section 23 of the Trademark Act, 15 U.S.C. § 1091.

Examining Attorney filed a Responsive Brief and Applicant filed its Reply Brief.[2] For the reasons set forth herein, we reverse the refusal to register.

Generic terms are common names that the relevant purchasing public understands primarily as describing the genus of particular goods or services. The generic name of a thing is in fact the ultimate in descriptiveness. *H. Marvin Ginn Corp. v. International Association of Fire Chiefs, Inc.*, 782 F.2d 987, 228 USPQ 528, 530 (Fed. Cir. 1986) *citing In re Northland Aluminum Products Inc.,* 777 F.2d 1556, 227 USPQ 961, 963 (Fed. Cir. 1985); *Weiss Noodle Co. v. Golden Cracknel & Specialty Co.,* 290 F.2d 845, 129 USPQ 411, 413 (CCPA 1961).

A generic term, by definition, identifies a type of product, not the source of the product. *In re Gould Paper Corp.*, 834 F.2d 1017, 5 USPQ2d 1110, 1111 (Fed. Cir. 1987). As such, a generic term cannot function as an indicator of the source of a product, and thus as a trademark, because the relevant public understands the term primarily as the common name for the product. *In re Dial-A-Mattress*, 240 F.3d 1341, 57 USPQ2d 1807, 1810 (Fed. Cir. 2001); *In re Merrill Lynch, Pierce, Fenner, & Smith, Inc.*, 828 F.2d 1567, 4 USPQ2d 1141, 1142 (Fed. Cir. 1987). Because a generic term is "the common descriptive name of a class of goods," it cannot acquire distinctiveness and cannot be registered as a trademark. *H. Marvin Ginn Corp. v. International Association of Fire Chiefs, Inc.,* 228 USPQ at 530; *see also Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.,* 469 U.S. 189, 224 USPQ 327, 329

---

[2] Because Applicant's Appeal Brief exceeded the twenty-five page length permitted for appeal briefs without having filed a request for leave to exceed the page limits, only Applicant's Supplemental Appeal Brief and its Reply Brief are considered in this appeal. 37 CFR § 2.142(b)(2).

(1985); *In re Pennington Seed, Inc.*, 466 F.3d 1053, 80 USPQ2d 1758, 1761 (Fed. Cir. 2006).

The "critical issue in genericness cases is whether members of the relevant public primarily use or understand the term sought to be protected to refer to the genus of goods or services in question." *H. Marvin Ginn v. International Association of Fire Chiefs*, 228 USPQ at 530. Determining whether a mark is generic therefore involves a two-step inquiry:

> 1) what is the genus of goods or services at issue?
>
> 2) does the relevant public understand the designation primarily to refer to that genus of goods and/or services?

*In re 1800Mattress.com IP, LLC*, 586 F.3d 1359, 92 USPQQ2d 1682, 1684 (Fed. Cir. 2009) quoting *H. Marvin Ginn v. International Association of Fire Chiefs,* 228 USPQ at 530.

We must first determine the genus of the goods at issue. Applicant asserts the following summary description of the goods, to which the Examining Attorney raises no objection,[3] to be an adequate definition of the genus at issue: dietary drinks and supplements, dermatologicals, pharmaceuticals, mouth and teeth preparations and cosmeceuticals.[4]

Normally, the genus of the goods at issue is adequately defined by the description of goods set forth in the application. *See Magic Wand Inc. v. RDB Inc.*,

---

[3] *See* the Examining Attorney's Appeal Brief (Exam. Atty. Brf.) at 23 TTABVUE 4. Citations to the record will include the TTABVUE cite, the docket history system for the Trademark Trial and Appeal Board.

[4] Applicant's Supplemental Appeal Brief (App. Suppl. Brf.) pp. 6-7 (22 TTABVUE 10-11).

940 F.2d 638, 19 USPQ2d 1551, 1552 (Fed. Cir. 1991) ("[A] proper genericness inquiry focuses on the description of services set forth in the [application or] certificate of registration"). Given that the description of goods set forth in the application recites "containing aloe" in each product category listed, we find that "containing aloe" is an important part of the genus. Therefore, the genus of goods is properly designated as: dietary drinks and supplements, dermatologicals, pharmaceuticals, mouth and teeth preparations and cosmeceuticals, all containing aloe.

Turning to the second factor, the test for determining whether ALOE BIOSCIENCE is generic turns upon the primary significance that the term will have to the relevant public. *Magic Wand Inc. v. RDB Inc.*, 19 USPQ2d at 1553. A term is generic if the relevant public primarily uses or understands the term to refer to the category or class of goods in question. *See, e.g., Park 'N Fly v. Dollar Park & Fly*, 224 USPQ at 329 ("A generic term is one that refers to the genus of which the particular product is a species.").

Here, the relevant public consists of consumers of dietary drinks and supplements, dermatologicals, pharmaceuticals, mouth and teeth preparations, and cosmeceuticals, all containing aloe. Evidence of the relevant public's understanding of the term ALOE BIOSCIENCE may be obtained from any competent source, including testimony, surveys, dictionaries, trade journals, magazines, newspapers, and other publications. *See In re Merrill Lynch, Pierce, Fenner, & Smith*, 4 USPQ2d at 1143; *In re Northland Aluminum Products*, 227 USPQ at 963. Further, research

databases, such as LEXIS/NEXIS, are also considered a source of competent evidence. *See In re Leatherman Tool Group, Inc.*, 32 USPQ2d 1443, 1449 (TTAB 1994). In addition, material obtained from third-party Internet websites is generally accepted as competent evidence. *See In re Country Music Association*, 100 USPQ2d 1824, 1829 (TTAB 2011); TBMP § 1208.03 (June 2014); TMEP § 710.01(b) (January 2015).

The Office bears the burden of proving that a term is generic by clear evidence. *In re Nordic Naturals, Inc.*, 755 F.3d 1340, 111 USPQ2d 1495, 1497 (Fed. Cir. 2014); *In re Merrill Lynch, Pierce, Fenner & Smith*, 4 USPQ2d at 1143. Based on the record, there is no clear evidence to support a finding that consumers, when considering ALOE BIOSCIENCE in conjunction with dietary drinks and supplements, dermatologicals, pharmaceuticals, mouth and teeth preparations and cosmeceuticals, all containing aloe, readily understand the term to identify a type of dietary drink, supplement, dermatological, pharmaceutical, mouth and teeth preparation and cosmeceutical, containing aloe.

In this case, ALOE BIOSCIENCE is somewhat more analogous to the compound word considered by the court in *In re Gould Paper*, 5 USPQ2d 1110, than it is to the phrase considered in *In re American Fertility Society,* 51 USPQ2d 1832, 1836 (Fed. Cir. 1999). That is to say, unlike the term SOCIETY FOR REPRODUCTIVE MEDICINE contemplated by the Federal Circuit in *American Fertility*, ALOE BIOSCIENCE appears to be less of a phrase comprising its constituent words, than a compound word formed by the union of ALOE and BIOSCIENCE. Thus,

dictionary definitions alone may support a refusal to register the proposed mark. However, we need not determine whether definitions of the constituent terms alone would be sufficient in view of the fact that the additional evidence made of record by the Examining Attorney establishes that the wording ALOE BIOSCIENCE is merely descriptive and not generic for Applicant's goods.

The fact that a term such as ALOE BIOSCIENCE is not found in the dictionary is not controlling on the question of registrability, and accordingly, does not mean that we ignore the meanings of the individual words contained in the mark. *See In re Gould Paper,* 5 USPQ2d at 1111; *In re Orleans Wines, Ltd.,* 196 USPQ 516, 517 (TTAB 1977).

Applicant concedes that prospective buyers of its goods would expect the goods contain aloe or are based on aloe and readily admits that its "goods will be made in substantial part of aloe,"[5] but also asserts that they "would not immediately understand that the goods and services provided under ALOE BIOSCIENCE are for dietary drinks and supplements, dermatologicals, pharmaceuticals, mouth and teeth preparations, and cosmeceuticals."[6]

Further, Applicant contends the dictionary definitions indicate that the word "aloe" can mean many different things, and therefore, it is not a generic term for Applicant's goods.[7]

---

[5] September 26, 2012 Response to Office Action.

[6] App. Suppl. Brf. p. 8 (22 TTABVUE 12).

[7] App. Suppl. Brf. p. 10 (22 TTABVUE 14).

Applicant also submits numerous third party registrations[8] covering marks containing the word "ALOE," and which also identify "aloe" in the identification of goods. Copies of registrations may be submitted to demonstrate the meaning of a word which comprises a mark, or a portion thereof, in the same way dictionary definitions are used to illustrate how a term is perceived in the trade or industry. *See In re Box Solutions Corp.*, 79 USPQ2d 1953, 1955 (TTAB 2006); *In re Opus One Inc.*, 60 USPQ2d 1812, 1814 (TTAB 2001) citing *Olde Tyme Foods Inc. v. Roundy's Inc.* 961 F.2d 200, 22 USPQ2d 1542, 1545 (Fed. Cir. 1992).

---

[8] Attached as Exhibits D and E, as well as portions of Exhibits G, H, I and J to Applicant's Supplemental Appeal Brief, are copies of numerous third-party registrations retrieved from the PTO's Trademark Electronic Search System (TESS) or Trademark Status & Document Retrieval (TSDR) database that were submitted in connection with Applicant's Responses of September 26, 2002 and September 24, 2013, and its Request for Reconsideration after Final Action filed on April 14, 2014. App. Suppl. Brf. at pp. 12-20 (22 TTABVUE 52-167, 176-185, 196-197, 200-205, 208-211, 222-223, 228-229, 238-239, 246-247, 256-257, 260-261, 264-265, 268-269). These registrations are properly of record and have been considered.

Applicant also submitted copies of additional registrations in Exhibits G, H, I and J of its Supplemental Brief, without objection by the Examining Attorney. The Board will ordinarily not consider additional evidence filed with the Board by the applicant or by the examining attorney after the appeal is filed. Trademark Rule 2.142(d), 37 CFR § 2.142(d). Thus, the record in an application should be complete prior to the filing of an appeal. However, the registration evidence submitted by Applicant is purely cumulative in nature and is discussed in the Examining Attorney's Brief. (24 TTABVUE 12). In view of the foregoing, the Board considered all of the registrations identified in Exhibits D, E, G, H, I and J for which Applicant submitted copies of the appropriate documentation from the TESS or TSDR during the prosecution of its application or on appeal. Trademark Trial and Appeal Board Manual of Procedure § 1207.03 (June 2014).

Exhibits C and F (22 TTABVUE 47-51, 168-175) consist of summary listings of applications and registrations in TESS for marks containing the terms "aloe" and "bioscience." Inasmuch as the Examining Attorney raised no objection and summarily addressed the marks listed therein, the Board considered the information provided in Exhibits C and F. However, such information did not provide any meaningful evidence as it is limited to the serial number, registration number, word mark, and whether the application or registration was "live/dead." No information regarding disclaimers, whether the registration is on the Principal Register or Supplemental Register, etc. is provided.

Applicant argues these registrations are conclusive evidence that the USPTO does not consider "ALOE" to be generic when paired with other words.[9] The eleven registrations noted by Applicant containing the word "ALOE" paired with word(s) that connote a medical or scientific meaning, offer little support for Applicant.[10] Ten of those registrations either contain a disclaimer of the word "aloe" or are for single-word marks in which "alo/aloe" forms part of the mark. In single-word marks where "alo/aloe" forms part of the mark, and the mark as a whole is not descriptive, no disclaimer is necessary. Only one of the marks, ALOE MED, is registered on the Supplemental Register, without a disclaimer of "aloe."[11]

---

[9] App. Suppl. Brf. p. 12 (22 TTABVUE 16).

[10] App. Suppl. Brf., pp. 14-15, Ex. E (22 TTABVUE 18-19, 146-167): Registration No. 4052875 GLUC-ALOE; Registration No. 3993182 PHARM-ALOE; Registration No. 3466904 PHARM-ALOE A NATURAL ALTERNATIVE; Registration No. 3045291 ALOE-ADE; Registration No. 4085385 ALOE MED; Registration No. 3850882 VITAMIN ALOE VERA; Registration No. 3912424 SINUSLAOE; Registration No. 1786437 ELECTRO ALOE; Registration No. 3792084 ALOEREST; Registration No. 1950356 ALOE FIRST; and Registration No. 1714879 ALO-LIP-SHIELD.

[11] While some marks registered on the Supplemental Register do not contain disclaimers, if a mark is comprised in part of matter that, as applied to the goods or services, is an unregistrable component of a mark that is otherwise registrable, the matter must be disclaimed to permit registration on the Principal Register or on the Supplemental Register. Section 6 of the Trademark Act, 15 U.S.C. § 1056. As stated in *In re Water Gremlin Co.*, 635 F.2d 841, 208 USPQ 89, 91 n.6 (CCPA 1980) (citing *In re Wella Corp.*, 565 F.2d 143, 196 USPQ 7 (CCPA 1977), "Section 6 is equally applicable to the Supplemental Register."). *See In re Wella*, 196 USPQ at 8 (finding mark comprising stylized lettering of BALSAM, with disclaimer of "BALSAM," registrable on Supplemental Register for hair conditioner and hair shampoo); *In re Carolyn's Candies, Inc.*, 206 USPQ 356, 360 (TTAB 1980) ("Section 6 of the Trademark Act of 1946, which provides for the disclaimer of 'unregistrable matter', does not limit the disclaimer practice to marks upon the Principal Register."); TMEP § 1213.03(b).

The Examining Attorney points to the definition of "aloe" which refers to "aloe vera" or "the juice or gel obtained from the leaves of this plant, widely used in cosmetic and pharmaceutical preparations."[12]

"Aloe" is an ingredient, feature and main characteristic of Applicant's goods, which is articulated in the description of goods contained in the application. It is well established that the name of an ingredient, feature, or a main characteristic of goods may be generic for those goods. *See In re Northland Aluminum Products Inc.,* 227 USPQ at 963-64 (holding BUNDT generic for cake mix); *A.J. Canfield Co. v. Honickman,* 808 F.2d 291, 1 USPQ2d 1364, 1365 (3d Cir. 1986) (holding CHOCOLATE FUDGE generic for diet sodas); *In re Bongrain International (American) Corp.,* 17 USPQ 1490, 1491 (TTAB 1990) (BABY BRIE is generic for small Brie cheese).

Applicant's arguments miss the point. Genericness is determined in relation to the relevant goods, and not in the abstract. Also, "[t]hat a term may have other meanings in different contexts is not controlling." *In re Franklin County Historical Society,* 104 USPQ2d 1085, 1087 (TTAB 2012) (citing *In re Bright-Crest, Ltd.,* 204 USPQ 591, 593 (TTAB 1979)). Thus, any term that the relevant public understands to refer to a particular genus of goods is generic for those goods. Indeed, there can be more than one generic term for a particular genus. *In re 1800Mattress.com IP,* 92 USPQ2d at 1685 ("We also disagree with [the] assertion that there can only be one

---

[12] May 31, 2012 Office Action, pp. 4, 8-10.

generic term . . . Instead, any term that the relevant public understands to refer to the genus . . . is generic.").

Here, as the Examining Attorney correctly notes, "'aloe' is an ingredient, feature and main characteristic of applicant's goods, which is shown in the application itself, as the identification states the goods contain 'aloe.'"[13] In addition, the record includes website evidence submitted by the Examining Attorney demonstrating generic use of the term "aloe," including website clips denoting "aloe" as: beneficial for skin care, likely safe for burns and wound healing, a type of dietary supplement, a cosmeceutical and dermatological with "aloe" being listed as a subcategory of goods, a type of both mouth and teeth preparations, being for skin disorders, and for improving digestion managing blood sugar levels.[14] In view of the foregoing, the relevant public would understand "aloe" to refer primarily to a genus of goods because "aloe" is a subset of goods for the markets for which Applicant produces goods, *i.e.*, dietary drinks and supplements, dermatologicals, pharmaceuticals, mouth and teeth preparations, and cosmeceuticals, all containing aloe.

---

[13] Exam. Atty. Brf. 24 TTABVUE 5.

[14] Exam. Atty. Brf. 24 TTABVUE 6-7; April 8, 2013 Denial of Request for Reconsideration: *Web*MD pp. 4-5 *http://www.webmd.com/vitamins-and-supplements/lifestyle-guide-11/supplement-guide-aloe-vera*, The Sleuth Journal pp. 15-16 *http://www.thesleuthjournal .com/11-amazing-benefits-drinking-aloe-vera-juice/*, iHerb.com pp. 23-26 *http://www.iherb .com/aloe-vera-lotion-cream-gel*; July 31, 2014 Denial of Request for Reconsideration: Mayo Clinic Aloe (Aloe vera) pp. 53-54 *http://www.mayoclinic.org/drugssupplements/aloe/safety /hrb-20058665,* Swanson Aloe Vera Gel pp. 57-58 h*ttp:/www.swansonvitamins.com/ swanson- premium-aloe-vera-whole-gel-32-fl-oz-946-ml-gel*, The Body Shop pp. 64-67, *http:/ /www.thebodyshop-usa.com/shop-by-line/aloe-skin-care-aspx?utm...*, National Center for Biotechnical Information pp. 76-77 *http://www.ncbi.nlm.nih.gow/pubmed/24603910*, A&Z Pharmaceutical, LLC pp.80-81 *http://www.azpharm.com/products/aloe*.

As to the term "bioscience," we note at the outset that Applicant relies on fifteen third-party registered marks containing the term "BIOSCIENCE," arguing these registrations are conclusive evidence that the USPTO does not consider "bioscience" to be generic when paired with other words.[15] However, fourteen of these registrations contain a disclaimer of the term "BIOSCIENCE." Thus, at the time such marks were registered for the identified goods, the "BIOSCIENCE" portion of the marks was considered to be unregistrable by the USPTO, or voluntarily disclaimed by the trademark owner.[16] Therefore, the registrations offer little, if any, support for Applicant's argument.[17]

With respect to the meaning of "bioscience," Applicant submits and relies on the definitions for the terms: (1) "bioscience" defined as "another name for a life science," and (2) "life science: Any of several branches of science, such as biology, medicine, anthropology, or ecology, that deal with living organisms and their

---

[15] App. Suppl. Brf. p. 15-16, Ex. G (22 TTABVUE 10-20, 176-205). The marks presented in sections 6 and 7 of Applicant's Brief, registered after the Applicant filed its application, similarly lend no support to Applicant's argument that the USPTO does not currently interpret "Aloe" and "Bioscience" to be generic of Applicant's goods. App. Suppl. Brf. pp. 17-20 (22 TTABVUE 21-24).

[16] Trademark Act § 6 (15 U.S.C. § 1056): Disclaimers (a) The Director may require the applicant to disclaim an unregistrable component of a mark unregistrable. An applicant may voluntarily disclaim a component of a mark sought to be registered. . . .

[17] Although Applicant acknowledges that prior registrations in other countries are not binding on the decisions of this Board, it suggests that its ownership of a recently issued registration for ALOE BIOSCIENCE in the European Union is evidence of the current interpretation of the term.[17] Registration in a foreign jurisdiction does not ensure eligibility for registration in the United States as applicants here are subject to the bars to registration mandated by U.S. law. *In re Rath*, 402 F.3d 1207, 74 USPQ2d 1174, 1179 (Fed. Cir. 2005); *In re Pedersen*, 109 USPQ2d 1185, 1197 (TTAB 2013). Therefore, Applicant's ownership of a Community Trademark registration for ALOE BIOSCIENCE issued by the Office for Harmonization in the Internal Market offers no support to overcome the genericness refusal under § 2(e) of the Trademark Act.

organization, life processes, and relationships to each other and their environment. Also called *bioscience*."[18] The Examining Attorney, likewise, submitted dictionary definitions showing that "bioscience" means "biological sciences collectively" or "the study of biology wherein all the sciences (physics, chemistry, etc.) are applied."[19]

Any term that the relevant public understands to refer to a particular genus of goods is generic for those goods. *In re 1800Mattress.com IP,* 92 USPQ2d at 1685. Inasmuch as the definitions of "bioscience" describe a broad category of sciences dealing with living organisms, and not the relevant genus of goods, these definitions do not show that the term is generic.

Additionally, the Examining Attorney argues, based on various internet evidence including corporate websites and advertisements, that "bioscience" is generic as it has also come to be used as an "entity designator," indicating a particular genus of companies whose products are created through applied sciences (*i.e.,* a bioscience company), that include supplements, dermatologicals, pharmaceuticals, mouth and teeth preparations, and cosmeceuticals.[20] For example,

---

[18] See COLLINS ENGLISH DICTIONARY-COMPLETE AND UNABRIDGED © HarperCollins Publishers 1991, 1994, 1998, 2000, 2003, *http://www.thefreedictionary.com/bioscience*, September 4, 2013, from the September 24, 2013 Response to Office Action, p. 32-33; and THE AMERICAN HERITAGE® DICTIONARY OF THE ENGLISH LANGUAGE, Fourth Edition copyright © 2000 by Houghton Mifflin Company, updated in 2009. Published by Houghton Mifflin Company. All rights reserved. *http://www.thefreedictionary.com/life+science*, September 4, 2013, from the September 24, 2013 Response to Office Action, p. 38.

[19] Oxford English Dictionary, *http://www.oed.com/view/Entry/273793?redirected From+bioscience#eid* July 31, 2014, July 31, 2014 Request for Reconsideration Denied, p. 15 (15 TTABVUE 16); Dorland's Illustrated Medical Dictionary, *http://search.credoreference.com/content/entry/ehsdorland/bioscienece/0?searchld=a06cbcf5-1818B-11e4-bbc7-oaea1e* July 31, 2014, July 31, 2014 Request for Reconsideration Denied, pp. 17-18 (15 TTABVUE 18-19).

[20] Exam. Atty. Brf. 24 TTABVUE 8-9.

there are copies of webpages featuring articles using the term "bioscience;" webpages from the corporate websites of bioscience companies that use "bioscience" as an entity designator in their corporate names, some within the same types of markets as those in which Applicant's goods could be sold; and websites offering "Bioscience" brand products for sale:

**Articles mentioning "bioscience:"**

Cosmetics design.com

Bioscience company enters personal care market with natural actives
The Iowa based company says the ingredients will be available for cosmetics, skin, hair and body care product manufacturers, attributing the move to consumer demand for natural and sustainable products.
 . . .
http://www/cosmeticsdesign.com/Formulation-Science/Bioscience-company-enters-personal-care-market-wth-natural-actives  November 8, 2012
November 8, 2012 Final Office Action, p. 33-36

_____

CRC Press

Skin Bioscience: A Molecular Approach
Published: February 28, 2013 by Pan Stanford Publishing – 2000 Pages
Features
Provides a primary reference work, in which skin bioscience is introduced with a specific focus on the molecular approach
. . .
Summary
Skin bioscience is a core part of dermatology and brings important guiding principles to skin care and dermatological therapy. Although the investigation of human skin bioscience is not necessarily easy because of the  . . . .

http://www.crcpress.com/product/isbn/9789814364959  November 8, 2012
November 8, 2012 Final Office Action, pp. 29-30
_____

New toothpaste derived from cocoa extract heralds sweet potential for N.O.

By Kimberly Quillen, The Times-Picayune

. . . A team of university researchers in Louisiana made the discovery and used their findings to develop a new toothpaste that hits retail shelves around the country this week. . . . Aaron Miscenich, president of the New Orleans BioInnovation Center, said Theodent's success in bringing a new toothpaste product onto the market will bolster efforts to develop the local bioscience industry….

http://blog.nola.com/business_impact/print.html?entry=/2012/01/new_toothpaste_derived_from_co.html  November 8, 2012
November 8, 2012 Final Office Action, p. 25-28

## "Bioscience" as an entity designator:

BD Biosciences
Bioprocessing Media and Supplements
With over 50 years of expertise . . . BD Biosciences . . . are used as
critical components in the production of some of the most widely used drugs
and vaccines on the global market today.

http://www.bdbiosciences.com/cellculture/advbio/  November 17, 2013
November 17, 2013 Final Office Action, p. 5-6

_____

Quincy Bioscience
Prevagen is the number One Branded Memory Supplement in the United States
Retailers and consumers alike have made Prevagen® the unique brain
Health supplement shown to improve memory, their preferred
memory  supplement . . .

Quincy Bioscience is a biotechnology company based in Madison, Wis.
That focuses on the discovery, development and commercialization of novel technologies to support good health in aging . . .

http://quincybioscience.com/prevagen-number-one-branded-memory-supplement-united-states/
November 17, 2013
November 17, 2013 Final Office Action, p. 7-8

_____

Waitaki Biosciences
Developer and Manufacturer of Nutritional Supplement Ingredients for
the Nutraceutical and Personal Care Markets
. . . Waitaki's key nutritional ingredients target joint and bone health,
Immune and digestive support, along with skin and hair care. . . .
These ingredients are used by Waitaki's clients in the USA, Asia, Europe

and Australasia in formulations for both human and animal
nutritional supplements and personal care products.

http://www.waitakibio.com/natural-ingredients/company-profile  November 17, 2013
November 17, 2013 Final Office Action, p. 9-10

_____

ActivX
Kyorin

ActivX Biosciences Inc. is a biopharmaceutical company that
discovers and develops highly selective best in class, small molecule drugs for
major unmet   medical needs. . . .

http://www.activx.com/ July 25, 2014
July 31, 2014 Request for Reconsideration Denied, p. 20.

_____

Creative® Bioscience
Designer Diet Products . . .
At Creative Bioscience® we know weight loss. We get it: you're a busy
person . . . Whether you're looking to lose a little or a lot, we've got an affordable,
effective diet supplement to tip the scales in your favor.

https://www.creative bioscience.com/ July 25, 2014
July 31, 2014 Request for Reconsideration Denied, p. 23-27.

_____

Euthymics® Bioscience
Euthymics Bioscience, Inc. is developing a novel medicine for major
depressive disorder and alcohol use disorder. . . .
http://euthymics.com/ July 25, 2014
July 31, 2014 Request for Reconsideration Denied, p. 28.

**Products for sale:**

Clarisonic
Skin Care Products
© 2013 Pacific Bioscience Laboratories Inc.

www.clarisonic.com/Skin-Care   July 25, 2014
July 31, 2014 Request for Reconsideration Denied, p. 31-34.

_____

Scimera (products)

Scimera BioScience® develops cutting-edge Bioceuticals that
Address cardiovascular, immune system, bone and joint,
gastrointestinal, respiratory, prostate and wide array of health issues.

Scimera.com/products.html/ July 25, 2014
July 31, 2014 Request for Reconsideration Denied, p. 35-37.

_____

TheVitaminShoppe

Creative BioScience
Raspberry Ketone 1234 (60 capsules, $0.79/serving) Sale Price $23.62

Quincy Bioscience
Prevagen (30 Capsules, $1.57/serving) Your price: $46.99

American Biosciences
Immpower (30 Veggie Caps, $2.07/serving) Your Price: $31.09

American Biosciences
Cholest Solve 24/7 (750 mg) (120 tablets) Your Price: $42.99

American Biosciences
Hp8 (70 Tablets, $1.23/serving) Your Price: $42.99

American Biosciences
Sugar Solve 24/7 (60 Softgels, $0.41/serving) Your Price: $24.49.

http://www.vitaminshoppe.com/search/controller?N=0&Ntk=SiteSearch&Ntt=bioscience&
*Nty=1&D=bioscience&Ntx=mode+m* . . . June 16, 2013
June 16, 2013 Office Action, p. 5-7

_____

Lucky Vitamin.com

Creative BioScience
20 Night Diet with Caralluma Fimbriata     Lucky Vitamin: $23.09

Creative BioScience
hCG Zero                    Lucky Vitamin: $29.89

. . .
American BioSciences
Sleep Solve 24/7          Lucky Vitamin: $31.79
30 Tablets

American BioSciences

Ave Ultra (Avemar Fermented Wheat     Lucky Vitamin $ 179.95
   Germ Extract) Orange

American BioSciences
Cholest Solve 24-7                    Lucky Vitamin $ $42.66
120 Tablets
. . .
http://www.luckyvitamin.com/sb-bioscience?page=2    June 16, 2013
June 16, 2013 Office Action, pp. 8-11

_____

Based on this evidence, the Examining Attorney concludes that "bioscience" as used in ALOE BIOSCIENCE is used as an entity designator for a company involved in the bioscience industry and fails to function as an indicator of the source of the goods.[21] "Given the widespread nature of 'bioscience' being used as a designator at the end of endless numbers of company names," the Examining Attorney contends that relevant consumers would see "bioscience" as separable matter, resulting in "aloe" and "bioscience" each being read to retain their generic meanings.[22]

Although the evidence shows "Bioscience" is used in company names, this does not establish that "Bioscience" is necessarily being used generically or that it is an entity designator. Rather, the evidence shows, in several instances, "Bioscience" being used as part of product brand names and also as part of company names preceding the entity designator "Inc.," for example, Pacific Bioscience Laboratories Inc., Euthymics Bioscience Inc., ActivX Biosciences Inc. The fact that companies

_____

[21] The Examining Attorney also noted that "[A]pplicant itself previously entered a disclaimer for 'BIOSCIENCE' on the Supplemental Register, even though the disclaimer was later withdrawn." 24 TTABVUE 10. Because Applicant withdrew the disclaimer in its Request for Reconsideration filed on April 17, 2014, we are not able to reach any conclusion based on Applicant's initial disclaimer of "BIOSCIENCE."

[22] Exam. Atty. Brf. 24 TTABVUE 11.

have utilized "Bioscience" in their names to describe the nature of their business does not render "Bioscience" generic for the goods at issue in this application. Taken in its entirety, the evidence establishes that "Bioscience" is merely descriptive term for a company involved with goods such as Applicant's goods; however, the record, does not show "Bioscience" is a generic entity designator or otherwise a generic term for Applicant's goods.

Applicant also contends that its ALOE BIOSCIENCE mark is suggestive, not generic, and summarily concludes "[w]hen ALOE and BIOSCIENCE come together to form the composite mark, they create a bizarre or incongruous meaning and evoke a new commercial impression" requiring consumers to engage in "mental gymnastics" in order to bring to mind any connection between the mark and the goods offered under the mark.[23] While the Board has recognized incongruity in a mark as "one of the accepted guideposts in the evolved set of legal principles for discriminating the suggestive from the descriptive mark," *In re Shutts*, 217 USPQ 363, 365 (TTAB 1983), Applicant provides no factual support or explanation of the bizarre or incongruous meaning, or the new commercial impression of ALOE BIOSCIENCE, and we see none.

The burden rests with the Trademark Examining Attorney to establish that the mark sought to be registered is generic for the goods. *In re Merrill Lynch, Pierce, Fenner & Smith*, 4 USPQ2d at 1143. The Office must be able to satisfy both elements of the test as set forth in *Marvin Ginn*, bearing in mind that "[a]ptness is

---

[23] App. Suppl. Brf. p. 7 (22 TTABVUE 11).

insufficient to prove genericness*." See In re American Fertility Society*, 51 USPQ2d 1836. It is incumbent upon the Trademark Examining Attorney to make a "*substantial showing* … that the matter is in fact generic." Indeed, this substantial showing "must be based on *clear evidence* of generic use." *Merrill Lynch*, 4 USPQ2d at 1143. Thus, it is beyond dispute that "a strong showing is required when the Office seeks to establish that a term is generic." *In re K-T Zoe Furniture Inc.*, 16 F.3d 390, 29 USPQ2d 1787, 1788 (Fed. Cir. 1994); *In re DNI Holdings Ltd.*, 77 USPQ2d 1435, 1437 (TTAB 2005).

Considering the evidence and arguments presented, Applicant's mark is not generic for its dietary drinks and supplements, dermatologicals, pharmaceuticals, mouth and teeth preparations, and cosmeceuticals, all containing aloe. The definitions of the individual words "aloe" and "bioscience" are insufficient to prove that Applicant's composite mark ALOE BIOSCIENCE is not capable of distinguishing Applicant's goods. While "aloe" may be a generic term for the goods which contain "aloe," "bioscience" merely describes a feature or characteristic of the goods. The internet evidence also does not show the genericness of ALOE BIOSCIENCE or of "Bioscience." Therefore, the use of "aloe" and "bioscience" together in the mark ALOE BIOSCIENCE does not result in a generic term. The fact that the evidence is devoid of any use of the unitary term ALOE BIOSCIENCE by anyone while not determinative, provides further support for the non-genericness of the mark. Even if we treat ALOE BIOSCIENCE as a phrase, rather than a compound term, the record supports the finding that ALOE BIOSCIENCE is

not generic when used in connection with Applicant's goods even in the absence of evidence that Applicant's competitors use the term ALOE BIOSCIENCE. The evidence noted above establishes that ALOE BIOSCIENCE describes, but does not identify the type of goods Applicant is selling (*i.e.*, dietary drinks and supplements, dermatologicals, pharmaceuticals, mouth and teeth preparations and cosmeceuticals, all containing aloe).

In sum, the evidence is not convincing that Applicant's mark is a generic designation used in the industry to identify products such as dietary drinks and supplements, dermatologicals, pharmaceuticals, mouth and teeth preparations, and cosmeceuticals, all containing aloe. Accordingly, we find that ALOE BIOSCIENCE is not generic and thus registrable on the Supplemental Register with a disclaimer of the exclusive right to use the word "Aloe."[24] *See* Trademark Rule 2.142(d), 37 C.F.R. 2.142(d).

**Decision**: The refusal to register Applicant's mark ALOE BIOSCIENCE is reversed contingent upon Applicant filing a disclaimer of the exclusive right to use the word "Aloe" within thirty days from the mailing date of this decision. If Applicant fails to submit a disclaimer of the exclusive right to use the word "Aloe," the refusal to register Applicant's mark will be affirmed.

---

[24] The proper format for the disclaimer to be entered after this decision would be: "No claim is made to the exclusive right to use ALOE apart from the mark as shown."