NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**IN RE: MAGNESITA REFRACTORIES COMPANY,**
*Appellant*

---

2016-2345

---

Appeal from the United States Patent and Trademark Office, Trademark Trial and Appeal Board in Nos. 77873477, 85834316.

---

Decided: November 27, 2017

---

THOMAS JOSEPH MOORE, Bacon & Thomas, Alexandria, VA, for appellant. Also represented by THOMAS LEE.

NATHAN K. KELLEY, Office of the Solicitor, United States Patent and Trademark Office, Alexandria, VA, for appellee Joseph Matal. Also represented by THOMAS L. CASAGRANDE, CHRISTINA HIEBER, MARYNELLE W. WILSON.

---

Before O'MALLEY, REYNA, and TARANTO, *Circuit Judges.*

REYNA, *Circuit Judge.*

Magnesita Refractories Company appeals the denial by the Trademark Trial and Appeal Board of two trade-

mark applications for the mark MAGNESITA. Appellant argues that the Board erred in finding that MAGNESITA is generic for refractory products and highly descriptive of online information services for refractory products. As substantial evidence supports the Board's findings, we *affirm*.

## BACKGROUND

Magnesita Refractories Company ("MRC"), a Brazilian company, filed two trademark applications with the U.S. Patent and Trademark Office ("PTO"). MRC sought registration of the standard-character mark MAGNESITA for refractory products and services. Refractory products are nonmetallic, extremely heat-resistant substances used to, *inter alia*, patch, line, or repair high temperature apparatuses, such as furnaces, kilns and reactors. *See* J.A. 173. MRC sought multi-class registration for refractory products in International Class 19, and for online information services related to using refractory products in International Class 37.[1]  J.A. 28, 198–99. Both appli-

---

[1]    To obtain a trademark, an applicant must identify the International Class for which it seeks registration. 37 C.F.R. §§ 2.32(a)(7).  International Class 19 relates to "[b]uilding materials (non-metallic); non-metallic rigid pipes for building; asphalt, pitch and bitumen; non-metallic transportable buildings; monuments, not of metal."  *Id.* § 6.1.  International Class 37 relates to services for "[b]uilding construction; repair; installation services."  *Id.*  Where, as here, multiple classes are sought, the applicant must include dates of use and submit a specimen for each class or provide a "statement that the applicant has a bona fide intention, and is entitled, to exercise legitimate control over the use of the mark in commerce, for collective marks, for each class."  *Id.* § 2.86(a)(3).  The PTO can issue a single certification

cations contained translation statements noting that the English translation of MAGNESITA is "magnesia" or "magnesite." J.A. 2–4.

MRC's first application, No. 77/873,477 ("'477 application"), requested registration based on MRC's bona fide intention to use the mark under § 1(b) of the Lanham Act, 15 U.S.C. § 1051 *et seq*. J.A. 28. Applying the doctrine of foreign equivalents, the examining attorney translated MAGNESITA into "magnesia" and "magnesite," and assessed the English translations for descriptiveness. J.A. 88. The doctrine of foreign equivalents is used to ascertain the genericness or descriptiveness of a foreign-word mark from a common language by translating the mark into English. *Palm Bay Imp., Inc. v. Veuve Clicquot Ponsardin Maison Fondee en 1772*, 396 F.3d 1369, 1377 (Fed. Cir. 2005). The doctrine only applies if an American buyer would translate the foreign mark into English and "take it as it is." *Id.* Here, the examining attorney refused registration on grounds that "magnesite" and "magnesia" are components of refractory products and are thus merely descriptive of MRC's goods and services. J.A. 88.

To overcome rejection, MRC amended the '477 application to claim acquired distinctiveness under § 2(f) of the Lanham Act based on substantially exclusive and continuous use of the mark in commerce. J.A. 261–63. The examining attorney also rejected this amendment. J.A. 349–50.

MRC submitted a second amendment to the '477 application, requesting that the mark be registered in the Supplemental Register. J.A. 2.[2] The examining attorney

___

of registration for the mark for multiple classes. *Id.* § 2.86(f).

[2] An applicant can register a mark in the Supplemental Register for its goods or services if it is capable of

accepted the amendment for MRC's Class 37 services. She rejected the amendment and denied registration for MRC's Class 19 goods on the ground that MAGNESITA is generic for refractory products. J.A. 2. She reasoned that "magnesite" or "magnesia" is a primary component of the refractory products MRC makes, and the name of an ingredient or a key aspect of a good renders the mark generic for those goods. J.A. 435. Because the examining attorney accepted MRC's amendment for Class 37 services, the only dispute in this appeal concerning the '477 application is whether MAGNESITA is generic for Class 19 refractory products.

As the '477 application was pending, MRC filed Application No. 85/834,316 ("'316 application") seeking to register MAGNESITA based on first use and use in commerce for Class 19 goods and Class 37 services under § 1(a) of the Lanham Act. J.A. 198. MRC asserted that it first used MAGNESITA in October 2008, and that the mark had acquired distinctiveness. For evidence, MRC produced data of its gross domestic sales from May 1, 2010, through December 31, 2013, and an article about MRC's acquisition of a U.S. refractory products company. J.A. 885. The examining attorney denied registration. First, as with the '477 application, the examining attorney found that MAGNESITA is generic or, in the alternative, highly descriptive, for refractory products in Class 19. J.A. 885. Second, the examining attorney found MAGNESITA to be highly descriptive for Class 37 services, and that MRC's evidence of acquired distinctiveness was insufficient for both Class 19 goods and Class 37 services. *Id.* She determined that MRC's three-and-a-

becoming distinctive, even if the mark is ineligible as "merely descriptive" for registration in the Principal Register. 15 U.S.C. § 1091; *In re Bush Bros. & Co.*, 884 F.2d 569, 570 (Fed. Cir. 1989).

half years of gross sales numbers alone were not enough to show that MAGNESITA distinctively indicates MRC as the source for the applied-for refractory products and services. *See id.*; J.A. 435. The examining attorney thus denied the '316 application. J.A. 4.

MRC appealed both registration refusals to the Board. The Board consolidated the appeals and affirmed the examining attorney's findings in a single opinion. J.A. 1, 22.

Starting with genericness, the Board determined that the genus of refractory goods is "[r]efractory products not made primarily of metal, namely, refractory bricks, refractory mixes for patching, lining or repairing high temperature apparatus and repairing the lining for furnaces, refractory furnace patching and repair mixes," and "pre-cast refractory shapes." J.A. 8. The Board defined the relevant public as consisting of "the public at large, namely, ordinary consumers who purchase such refractory products" that range from "retail purchasers of household products to industrial purchasers for commercial operations." *Id.* The Board next applied the doctrine of foreign equivalents. J.A. 10. The Board relied on record evidence indicating that MAGNESITA translates to "magnesia" from Italian, and "magnesite" from Spanish and Portuguese, and that these three languages are common and modern. J.A. 9–10. The Board reviewed fifteen definitions, descriptions, and uses of magnesite and magnesia that consistently defined the minerals as the primary components of refractory products. J.A 11–13. The Board also considered three examples of where "magnesite" and "magnesia" were used as a name for refractory bricks, as well as nine examples of other companies using the words "magnesite" and "magnesia" in connection with refractory products. J.A. 14–16. Based on this evidence, the Board had "no doubt that potential purchasers familiar with Spanish, Portuguese or Italian would understand MAGNESITA to refer, at minimum, to

a type of refractory brick, *i.e.*, a magnesite brick." J.A. 17. The Board therefore affirmed the examining attorney's conclusion that MAGNESITA is generic for the genus of Class 19 goods identified in the '477 and '316 applications. J.A. 18.

The Board also agreed with the examining attorney that MRC failed to show acquired distinctiveness for both Class 19 goods and Class 37 services as claimed in the '316 application. In support of its claim, MRC had produced: (1) a declaration by MRC's outside counsel attesting to substantial and exclusive use of MAGNESITA since 2010; (2) a Canadian registration for MAGNESITA; (3) a declaration by MRC's general counsel attesting to gross sales between 2010 and 2012; (4) an article from a trade publication showing MRC's first use of the MAGNESITA mark in October 2008; (5) a second declaration from MRC's general counsel testifying on gross sales in 2014; and (6) a second declaration from MRC's outside counsel attesting to no third-party use of MAGNESITA for refractory products. J.A. 19–20. Although the Board recognized that five years of substantially exclusive and continuous use may serve as prima facie evidence of acquired distinctiveness, because the mark is highly descriptive, the Board determined that more evidence is necessary to show the extent to which the public perceives MAGNESITA to indicate MRC as the source of the applied-for refractory goods and services. J.A. 20.

MRC appeals. We have jurisdiction under 28 U.S.C. § 1295(a)(4)(B).

## DISCUSSION

MRC challenges the Board's finding that MAGNESITA is generic or highly descriptive for Class 19 refractory products, and highly descriptive for Class 37 services. Specifically, MRC contends that the Board's genericness finding is not based on substantial evidence, and that MRC has shown that MAGNESITA has acquired

distinctiveness under § 2(f) of the Lanham Act based on gross sales data and five years of substantially exclusive and continuous use of the mark in U.S. commerce.

## 1. Standard of Review

We review the Board's legal conclusions *de novo* and its factual findings for substantial evidence. *In re La. Fish Fry Prods., Ltd.*, 797 F.3d 1332, 1335 (Fed. Cir. 2015). Genericness and acquired distinctiveness are factual determinations. *Id.* The PTO has the burden of proving a term is generic based on clear evidence, and the trademark applicant has the burden of proving acquired distinctiveness. *Id.*; *In re Nordic Nats., Inc.*, 755 F.3d 1340, 1342–43 (Fed. Cir. 2014).

MRC contends that this court should reconsider our allocation of the burden of proof on the applicant to show acquired distinctiveness in view of the Supreme Court's decision in *B & B Hardware, Inc. v. Hargis Industries, Inc.*, 135 S. Ct. 1293 (2015). In *B & B Hardware*, the Supreme Court held that district courts should give preclusive effect to Trademark Trial and Appeal Board decisions in *inter partes* proceedings if the elements of issue preclusion are met. 135 S. Ct. at 1299. *B & B Hardware* is inapplicable. MRC makes no issue preclusion argument, but rather attempts to import regulations governing the evidentiary burdens that apply to adversarial parties into this *ex parte* appeal. *B & B Hardware* does not address the evidentiary burdens involved in *ex parte* proceedings. Indeed, the regulations setting forth the content requirements for a trademark application obligate an applicant to submit proof supporting any claim of acquired distinctiveness. 37 C.F.R. § 2.41; *see La. Fish Fry*, 797 F.3d at 1336; *In re Steelbuilding.com*, 415 F.3d 1293, 1297 (Fed. Cir. 2005). Accordingly, we do not read *B & B Hardware* as disrupting our well-settled law.

2. Genericness of "Magnesite" and "Magnesia" as to Class
19 Refractory Products

A mark is generic if the relevant public primarily uses or understands the mark to refer to the class or genus of products in question. *Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 469 U.S. 189, 194 (1985). Generic terms cannot be registered as trademarks because they are common descriptive names of a class of products. *Nordic Nats.*, 755 F.3d at 1342; *H. Marvin Ginn Corp. v. Int'l Ass'n of Fire Chiefs, Inc.*, 782 F.2d 987, 989 (Fed. Cir. 1986) ("The generic name of a thing is in fact the ultimate in descriptiveness.").

MRC does not challenge the applicability of the doctrine of foreign equivalents or the Board's assessment of the genus of products or relevant public. Instead, MRC contends that the only conclusion that could be drawn from the record evidence is that magnesite and magnesia can be used in refractory material. Appellant's Br. 14. We disagree.

The record before the Board includes numerous uses of magnesite and magnesia as key components in refractory products. *See* J.A. 11–14. For example, one of fifteen definitions, descriptions, and uses of magnesite and magnesia considered by the Board, the Industrial Minerals Association of North America, describes magnesia as follows:

> Dead-burned magnesia, also known as refractory magnesia, is produced from the heating of magnesite or magnesium hydroxide and is the primary component in refractory materials. The refractory industry is the greatest consumer of magnesium compounds, over all. Refractory materials are nonmetallic substances which are extremely heat resistant, and are of great industrial value as the lining of furnaces, kilns, and reactors. The steel

industry, for instance, is the largest use of refractory magnesia.

J.A. 173. Additional record evidence shows use of the terms "magnesia brick" and "magnesite bricks" as synonyms for refractory bricks. J.A. 410–11, 437. The Board further cited to nine examples from websites and technical data sheets showing companies using the words "magnesite" and "magnesia" when discussing refractory products. J.A. 15–16. For example, the Hindustan Produce Company website states that Dead Burnt Magnesite or Fused Magnesite "are used in: Refractory Industry for manufacture of Basic Refractory Bricks . . . ." J.A. 440. On their face, these examples do more than simply show that magnesite and magnesia are potential components of some refractory products. They provide clear evidence for the Board's finding that the relevant public, industrial purchasers and refractory product consumers, would primarily understand magnesia and magnesite to refer to the genus of refractory products by referring to key aspects of those products. *See In re Cordua Rests., Inc.*, 823 F.3d 594, 603–04 (Fed. Cir. 2016) (holding that certain words referring to key aspects of a genus of services were generic for those services). As such, substantial evidence supports the Board's conclusion.

Because we affirm the Board's finding that MAGNESITA is generic for the genus of refractory products set forth in MRC's application, it cannot be registered as a trademark. *Nordic Nats.*, 755 F.3d at 1342; *see In re 1800Mattress.com IP, LLC*, 586 F.3d 1359, 1363 (Fed. Cir. 2009); *In re Northland Aluminum Prods, Inc.*, 777 F.2d 1556, 1560 (Fed. Cir. 1985). We therefore do not address the Board's alternative finding of descriptiveness for Class 19 products for either the '477 or '316 applications.

3. Acquired Distinctiveness as to Class 37 Services

MRC challenges the Board's finding that MRC has not shown that MAGNESITA has acquired distinctiveness

for Class 37 services. To establish that a term has acquired distinctiveness, a trademark applicant must show that "the primary significance of term in the minds of the consuming public is not the product but the producer." *Kellogg Co. v. Nat'l Biscuit Co.*, 305 U.S. 111, 118 (1938); *Coach Servs., Inc. v. Triumph Learning LLC*, 668 F.3d 1356, 1379 (Fed. Cir. 2012). If a term is highly descriptive, the applicant faces an elevated burden to show acquired distinctiveness. *La. Fish Fry*, 797 F.3d at 1336. To meet its elevated burden, an applicant can submit advertising expenditures and sales success, as well as length of exclusivity of use. *Id.* at 1336–37. But the precise amount and character of evidence necessary varies on case-specific facts and the nature of the mark. *See Roux Labs, Inc. v. Clairol, Inc.*, 427 F.2d 823, 829 (C.C.P.A. 1970).

As an initial matter, an applicant's claim asserting a term has acquired distinctiveness acts as an admission that the term is merely descriptive. *Yamaha Int'l Corp. v. Hoshino Gakki Co.*, 840 F.2d 1572 (Fed. Cir. 1988); *see Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 772 (1992) (recognizing that § 2 of the Lanham Act "requires secondary meaning only as a condition to registering descriptive marks"). By claiming that MAGNESITA has acquired distinctiveness for Class 37 services, MRC concedes that MAGNESITA is merely descriptive for those services. Thus, absent a showing of acquired distinctiveness, MRC cannot register MAGNESITA as a trademark.

MRC argues that MAGNESITA has acquired distinctiveness based on its gross sales from 2010 through 2014, and declarations establishing first use and substantially exclusive and continuous use of MAGNESITA since October 2008. According to MRC, sales data and proof of five years of use is by statute sufficient evidence to show that MAGNESITA has acquired distinctiveness. Appellant's Br. 24–25. To show that this evidence is sufficient,

MRC relies on the language of § 2(f) of the Lanham Act, which pertinently states:

> The Director *may* accept as prima facie evidence that the mark has become distinctive, as used on or in connection with the applicant's goods in commerce, proof of substantially exclusive and continuous use thereof as a mark by the applicant in commerce for the five years before the date on which the claim of distinctiveness is made.

15 U.S.C. § 1052(f) (emphasis added).

MRC misunderstands the statute. "May" implies discretion; it does not connote a requirement. *Kingdomware Techs., Inc. v. United States*, 136 S. Ct. 1969, 1977 (2016). Therefore, the Board is not required to find acquired distinctiveness solely based on five years of sales data and substantially exclusive and continuous use of a mark in commerce. *See La. Fish Fry*, 797 F.3d at 1337; *see also Cicena Ltd. v. Columbia Telecomms. Grp.*, 900 F.2d 1546, 1551 (Fed. Cir. 1990). The Board has discretion to require more evidence of acquired distinctiveness, particularly for highly descriptive marks. *La. Fish Fry*, 797 F.3d at 1337.

Here, the Board correctly found MAGNESITA is highly descriptive of MRC's Class 37 services based on the ample evidence supporting its genericness finding. After reviewing MRC's sales data and declarations, the Board faulted MRC for not submitting any evidence demonstrating how the public perceives MAGNESITA as indicating source. J.A. 20. We agree. Based on the highly descriptive nature of MAGNESITA for Class 37 services, MRC had an elevated burden to show acquired distinctiveness by more than sales data and five years of use. *La. Fish Fry*, 797 F.3d at 1337. But MRC did not add any evidence to the record showing how the public perceives the term, or how the term is otherwise source-identifying. The Board was within its discretion to require MRC submit additional evidence of acquired distinctiveness. *Id.*; *see*

*also* 15 U.S.C. § 1052(f).  Therefore, substantial evidence supports the Board's conclusions that MAGNESITA is highly descriptive for Class 37 services, and that MRC failed to show acquired distinctiveness.

## CONCLUSION

We have considered MRC's remaining arguments and find them unpersuasive.  Substantial evidence supports the Board's findings that MAGNESITA is generic for refractory products and is highly descriptive of information services for refractory products.  We therefore *affirm*.

## AFFIRMED

### COSTS

No costs.