This Opinion is a
Precedent of the TTAB

Mailed: March 2, 2021

UNITED STATES PATENT AND TRADEMARK OFFICE

―――

Trademark Trial and Appeal Board

―――

*In re The Consumer Protection Firm PLLC*

―――

Serial Nos. 87445801 and 87444846

―――

Mindi M. Richter and Jeffrey B. Fabian of Shumaker Loop & Kendrick LLP,
    for The Consumer Protection Firm PLLC.

Caroline L. Moran, Trademark Examining Attorney, Law Office 125,
    Heather Biddulph, Managing Attorney.

―――

Before Cataldo, Lynch and Hudis,
    Administrative Trademark Judges.

Opinion by Hudis, Administrative Trademark Judge:

The Consumer Protection Firm PLLC ("Applicant") seeks registration on the

Supplemental Register of the marks THE CONSUMER PROTECTION FIRM (in

standard characters, "Firm" disclaimed) ("Applicant's Proposed Word Mark"), and



("Firm.com" disclaimed) ("Applicant's Proposed Word-and-Design Mark") (collectively, "Applicant's Proposed Marks"), both for "legal services" in International Class 45 ("Applicant's services").[1]

The Trademark Examining Attorney refused registration under Trademark Act Sections 23(c) and 45, 15 U.S.C. §§ 1091(c) and 1127, on the ground that Applicant's Proposed Marks, as applied to the services identified in the applications, are generic and thus incapable of functioning as source identifiers in commerce. After the Examining Attorney made the refusals final, Applicant appealed to this Board. Applicant and the Examining Attorney filed briefs.[2] We affirm the refusal to register

---

[1] Application Serial No. 87445801 filed on May 11, 2017, under Trademark Act Section 1(a), 15 U.S.C. § 1051(a), based upon Applicant's claim of first use anywhere and use in commerce since at least as early as February 8, 2016. During prosecution, Applicant amended the application to seek registration on the Supplemental Register under Trademark Act Section 23, 15 U.S.C. § 1091.

Application Serial No. 87444846 filed on May 10, 2017, under Trademark Act Section 1(a), 15 U.S.C. § 1051(a), based upon Applicant's claim of first use anywhere and use in commerce since at least as early as February 8, 2016. During prosecution, Applicant amended the application to seek registration on the Supplemental Register under Trademark Act Section 23.

In the 87444846 Application, the mark is described as follows: "The color(s) green, navy blue, red, and yellow is/are claimed as a feature of the mark. The mark consists of a square outlined in navy blue with the words 'THE CONSUMER PROTECTION FIRM.COM' featured inside the square. The word 'THE' is in green and appears above the word 'CONSUMER'. The word 'CONSUMER' is in navy blue and appears above the word 'PROTECTION'. The word 'PROTECTION' is in red and appears above the text 'FIRM.COM'. The word 'FIRM' is separated from 'COM' with a yellow period with 'FIRM' in green and 'COM' in yellow."

[2] Applicant filed a Supplemental Brief in the appeal involving Application Serial No. 87444846, at 10 TTABVUE, bringing to our attention the Supreme Court's recent decision in *U. S. Patent & Trademark Office v. Booking.com B.V.*, 140 S. Ct. 2298, 2020 USPQ2d 10729 (2020). Suffice to say, the Board is aware of this decision. Supplemental briefs are not permitted unless authorized by the Board. *See* Trademark Rules 2.142(b)(1) and 2.142(b)(2), 37 C.F.R. §§ 2.142(b)(1) and 2.142(b)(2). We therefore give Applicant's Supplemental Brief no consideration. *See Westrex Corp. v. New Sensor Corp.*, 83 USPQ2d 1215, 1216 n.1 (TTAB 2007).

Applicant's Proposed Word Mark, THE CONSUMER PROTECTION FIRM. We affirm the refusal to register Applicant's Proposed Word-and-Design Mark, THE CONSUMER PROTECTION FIRM.COM & Design in the absence of a disclaimer of "THE CONSUMER PROTECTION FIRM.COM."

**Separate Appeals, Single Opinion**

Because these appeals present similar issues, we issue a single opinion for both. *In re Vertex Grp. LLC*, 89 USPQ2d 1694, 1695 (TTAB 2009) ("In view of the virtually identical issues presented, the Board has chosen to issue this single decision."). However, each proceeding retains its separate character and will result in the entry of a separate judgment for each appealed application; a copy of this decision shall be placed in each proceeding file. *In re Hudson News Co.*, 39 USPQ2d 1915, 1916 n.5 (TTAB 1996) (Board issued a single opinion in the interest of judicial economy, but each appeal stands on its own merits), *aff'd mem.*, 114 F.3d 1207 (Fed. Cir. 1997).

As these two appeals involve common issues of law and fact, unsurprisingly the prosecution histories on appeal are nearly identical. For judicial economy, in this opinion unless otherwise indicated, we cite to the prosecution history and appellate briefs concerning Applicant's Proposed Word Mark (of Application Serial No. 87445801, or the "'801 Application"); where additional issues pertain to Applicant's Proposed Word-and-Design Mark (of Application Serial No. 87444846, or the "'846 Application"), we cite to those briefs.[3]

---

[3] Page references herein to the application records refer to the online database of the USPTO's Trademark Status & Document Retrieval ("TSDR") system. All citations to documents contained in the TSDR database are to the downloadable .pdf versions of the documents in the USPTO TSDR Case Viewer. References to the briefs on appeal refer to the Board's

## I. Applicable Law

"At the lowest end of the distinctiveness scale [of marks and terms] is the 'generic name for the goods or services. ... The name of the good [or service] itself … is incapable of 'distinguish[ing] [one provider's services …] from the [services] … of others' and is therefore ineligible for registration. … Indeed, generic terms are ordinarily ineligible for protection as trademarks at all." *U. S. Patent & Trademark Office v. Booking.com B.V.*, 140 S. Ct. 2298, 2020 USPQ2d 10729, at *3-4 (2020). Such terms can never attain trademark status because "[t]o allow trademark protection for generic terms, i.e., names which describe the genus of goods being sold ... would grant the owner of the mark a monopoly, since a competitor could not describe his goods as what they are." *In re Merrill Lynch, Pierce, Fenner, and Smith Inc.*, 828 F.2d 1567, 4 USPQ2d 1141, 1142 (Fed. Cir. 1987) (quoting *CES Publ'g Corp. v. St. Regis Publ'ns, Inc.*, 531 F.2d 11, 188 USPQ 612, 615 (2d Cir. 1975)).

"A generic term is one that refers to the genus of which the particular product is a species." *Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 469 U.S. 189, 224 USPQ 327, 329 (1985). *See also In re Dial-A-Mattress Operating Corp.*, 240 F.3d 1341, 57 USPQ2d 1807 (Fed. Cir. 2001) (A designation is generic if it refers to the class or category of goods or services on or in connection with which it is used.) (citing *H. Marvin Ginn Corp. v. Int'l Ass'n of Fire Chiefs, Inc.*, 782 F.2d 987, 228 USPQ 528, 532 (Fed. Cir. 1986)); *In re 1800Mattress.com IP LLC*, 586 F.3d 1359, 92 USPQ2d 1682,

TTABVUE docket system. The number before the designation TTABVUE is the docket entry number; and the numbers after this designation are the page references, if applicable.

1685 (Fed. Cir. 2009) ("The test is not only whether the relevant public would itself use the term to describe the genus, but also whether the relevant public would understand the term to be generic.").

The U.S. Court of Appeals for the Federal Circuit additionally has said that "a term can be generic for a genus of goods or services" if the relevant public "understands the term to refer to a key aspect of that genus." *In re Cordua Rests., Inc.*, 823 F.3d 594, 118 USPQ2d 1632, 1637 (Fed. Cir. 2016); *see also Royal Crown Co. v. Coca-Cola Co.*, 892 F.3d 1358, 127 USPQ2d 1041, 1047 (Fed. Cir. 2018). In this regard, if the proposed mark defines "an integral, if not the paramount, aspect of … [the] services[,] as [the Applicant] defines … [them,]" the term or phrase sought for registration may be found generic for those services. *See In re Reed Elsevier Props. Inc.*, 482 F.3d 1376, 82 USPQ2d 1378, 1380 (Fed. Cir. 2007) (affirming refusal of LAWYERS.COM as generic for an online database featuring an information exchange of law, legal news, and legal services).

A term does not need to be the name of a specific service (in this case, consumer protection legal services) to be found generic. *See In re 1800Mattress.com*, 92 USPQ2d at 1685 ("We also disagree with Dial-A-Mattress's assertion that there can only be one generic term, which is 'online mattress stores.' Instead, any term that the relevant public understands to refer to the genus of 'online retail store services in the field of mattresses, beds, and bedding' is generic."); *Roselux Chem. Co. v. Parsons Ammonia Co.*, 299 F.2d 855, 132 USPQ 627, 632 (CCPA 1962) ("[I]n considering whether 'sudsy ammonia' is a **common** descriptive name of the product we cannot

fail to take into consideration the class of people who will commonly be using it and what they will commonly call it."); *Clairol, Inc. v. Roux Distrib. Co.*, 280 F.2d 863, 865, 126 USPQ 397, 398 (CCPA 1960) ("The same merchandise may, and often does, have more than one generic name.").

Whether a particular term is generic is a question of fact. *In re Hotels.com LP*, 573 F.3d 1300, 91 USPQ2d 1532, 1533 (Fed. Cir. 2009). Resolution of that question depends on the primary significance of the term to the relevant public. *Booking.com*, 2020 USPQ2d 10729, at *5 ("[T]he relevant meaning of a term is its meaning to consumers."). "The critical issue in genericness cases is whether members of the relevant public primarily use or understand the term sought to be protected to refer to the genus of goods or services in question." *Princeton Vanguard, LLC v. Frito-Lay N. Am., Inc.*, 786 F.3d 960, 114 USPQ2d 1827, 1830 (Fed. Cir. 2015) (quoting *Marvin Ginn*, 228 USPQ at 530).

The genericness inquiry is a two-part test: "First, what is the genus of goods or services at issue? Second, is the term sought to be registered ... understood by the relevant public primarily to refer to that genus of goods or services?" *In re Reed Elsevier*, 82 USPQ2d at 1380 (quoting *Marvin Ginn*, 228 USPQ at 530).

### A.    Genus of the Services

"[A] proper genericness inquiry focuses on the description of services set forth in the [application or] certificate of registration." *Magic Wand Inc. v. RDB Inc.*, 940 F.2d 638, 19 USPQ2d 1551, 1552 (Fed. Cir. 1991). In many instances, as in this case, there is no dispute that the application's description of the goods adequately defines the genus. *In re Nordic Naturals, Inc.*, 755 F.3d 1340, 111 USPQ2d 1495, 1496 (Fed. Cir.

2014) ("The Board found that the relevant goods were adequately defined by Nordic's description: 'nutritional supplements containing DHA.'"); *In re 1800Mattress.com IP LLC*, 92 USPQ2d at 1684 ("In this case, the parties agree that the genus of services is "online retail store services in the field of mattresses, beds, and bedding."). *Compare In re American Institute of Certified Public Accountants*, 65 USPQ2d 1972, 1981-82 (TTAB 2003) ("The observation [that the definition of the genus can substantially affect the final determination] seems not to have gone unnoticed by either applicant or the examining attorney, who argue for different definitions of the involved class of goods."). Here, Applicant and the Examining Attorney agree that the proper genus to be considered for the genericness inquiry is defined by the identification of services in the applications as "legal services."[4]

### B. Perception of the Proposed Mark by the Relevant Public

#### 1. The Relevant Public

Once the genus of the services is determined, we next must determine whether the relevant public understands the proposed mark primarily to refer to "legal services." Applicant and the Examining Attorney agree that the relevant public consists of ordinary consumers of legal services.[5] This is consistent with the evidence made of record.[6] *In re Empire Tech. Dev. LLC*, 123 USPQ2d 1544, 1548 (TTAB 2017).

---

[4] Applicant's Brief, 4 TTABVUE 8; Examining Attorney's Brief, 6 TTABVUE 6.

[5] Applicant's Brief, 4 TTABVUE 11; Examining Attorney's Brief, 6 TTABVUE 7.

[6] Definitions of "Consumer Protection," "Consumer Rights - Consumer Protection Law" and "Firm," provided with Office Action of August 8, 2017 at TSDR 9-31; definition of "Firm," provided with Office Action Response of February 7, 2018 at TSDR 25-30; and news article interviews of lawyers affiliated with Applicant's law firm, provided with Office Action Response of February 11, 2019 at TSDR 17-31.

### 2. Assessing the Relevant Public's Perception

"Evidence informing [the] … inquiry [whether a term is generic] can include not only consumer surveys, but also dictionaries, usage by consumers and competitors, and any other source of evidence bearing on how consumers perceive a term's meaning." *Booking.com*, 2020 USPQ2d 10729, at \*7 n.6; *see also In re Cordua*, 118 USPQ2d at 1634 (citing *Princeton Vanguard*, 114 USPQ2d at 1830 (quoting *In re Northland Aluminum Prods., Inc.*, 777 F.2d 1556, 227 USPQ 961, 963 (Fed. Cir. 1985) ("Evidence of the public's understanding of the mark may be obtained from 'any competent source, such as consumer surveys, dictionaries, newspapers and other publications.'")); *Cont'l Airlines Inc. v. United Air Lines Inc.*, 53 USPQ2d 1385, 1395 (TTAB 1999) (use of term "e-ticket" by media and competitors indicates term is generic for electronic tickets).

In assessing the primary significance of Applicant's Proposed Marks to the relevant public, we also may consider Applicant's use thereof. *In re Gould Paper Corp.*, 834 F.2d 1017, 5 USPQ2d 1110, 1112 (Fed. Cir. 1987) ("Gould's own submissions provided the most damaging evidence that its alleged mark is generic and would be perceived by the purchasing public as merely a common name for its goods rather than a mark identifying the good's source."); *In re Empire Tech.*, 123 USPQ2d at 1553 ("While [Applicant] uses 'coffee flour' in prominent stylized lettering, in the position and manner of a trademark, no separate generic term for the product accompanies the putative mark.").

Assessing the relevant public's perception of Applicant's Proposed Marks is the crux of the disagreement between Applicant and the Examining Attorney. On the one

hand, Applicant criticizes the quantity and pertinence of the Examining Attorney's evidence of genericness, which includes, among other items, uses of "consumer protection firm" and "consumer protection law firm" by parties other than Applicant.[7] On the other hand, the Examining Attorney asserts Applicant's evidence of non-genericness, such as third-party registrations of marks for legal services that contain the word "firm" and a reference to a type of law, either is irrelevant or insufficient to overcome the USPTO's evidence of genericness.[8] We thus consider the evidence and what it demonstrates about the primary significance of Applicant's Proposed Marks to the relevant public.

## II. Evidence on the Question of Genericness

### A. The Examining Attorney's Evidence

With the First Office Action, the Examining Attorney provided a WIKIPEDIA definition of "Consumer Protection" as:

> [A] group of laws and organizations designed to ensure the rights of consumers, as well as fair trade, competition, and accurate information in the marketplace. The laws are designed to prevent the businesses that engage in fraud or specified unfair practices from gaining an advantage over competitors. They may also provide additional protection for those most vulnerable in society. **Consumer protection laws** are a form of government regulation that aim to protect the rights of consumers.[9] (Emphasis added).

---

[7] Applicant's Brief, 4 TTABVUE 8, 10-12; Applicant's Reply Brief, 7 TTABVUE 3-4.

[8] Examining Attorney's Brief, 6 TTABVUE 12-13.

[9] August 8, 2017 Office Action at TSDR 9-15. WIKIPEDIA is an Internet source whose contents are continuously subject to change via collaborative user-input. *See In re Jimmy Moore LLC*, 119 USPQ2d 1764, 1768 (TTAB 2016). The Board thus bears in mind the limitations inherent in this reference work. In the case before us, the WIKIPEDIA evidence was submitted with the Examining Attorney's initial Office Action, and Applicant had an opportunity to rebut it. *See In re IP Carrier Consulting Grp.*, 84 USPQ2d 1028, 1032 (TTAB 2007) ("[T]he Board will consider evidence taken from WIKIPEDIA so long as the non-offering party has an opportunity

From another online resource, the Examining Attorney supplied an explanation of "Consumer Rights - Consumer Protection Law" as providing "a way for individuals to fight back against abusive business practices. These laws are designed to hold sellers of goods and services accountable when they seek to profit by taking advantage of a consumer's lack of information or bargaining power."[10] Also made of record is the definition of "Firm" as "an organization which sells or produces something or which provides a service which people pay for" and "a business company or partnership of two or more persons." A "law firm" is one of the examples given.[11]

Next, the Examining Attorney made of record pages from Applicant's website which states that one of its attorneys, William Howard, is considered a "Superhero in the Consumer Protection World" and that stories of his "**consumer protection cases** ... have gone 'viral' on the internet" (emphasis added).[12]

Further, throughout the prosecution of the refused applications, the Examining Attorney submitted website examples from third-party consumer protection law firms (emphasis added):

- Kelly & Crandall, PLLC – a law firm describing itself as a "**firm** . . . provid[ing] client-focused counsel in . . . **consumer protection** matters" (http://www.kellyandcrandall.com/).

---

to rebut that evidence by submitting other evidence that may call into question the accuracy of the particular WIKIPEDIA information.").

[10] Definition of Consumer rights and protection law from HG.ORG LEGAL RESOURCES, *Id.* at TSDR 16-19.

[11] Definition of "Firm" from COLLINS ENGLISH DICTIONARY, *Id.* at TSDR 20-31.

[12] *Id.* at TSDR 32-36.

- Marshall Law Firm – a law firm describing itself as a "**firm** ha[ving] extensive knowledge of the **consumer protection** laws" (http://www.marshall-law-firm.com/).

- Francis & Mailman – a law firm describing itself as a "**firm** . . . that concentrates in **consumer protection** litigation" (https://www.**consumerlawfirm.com**/).[13]

- Law Office of Sean E. Underwood – describing the firm's consumer protection practice, saying "our office represents consumers in asserting their rights under a wide variety of state and federal **consumer protection** laws . . . In particular, the **firm** is often involved in actions to enforce individual consumer rights . . .") (http://www.seulaw.com/practice-areas/consumer-law).

- Thomas R. Breeden, P.C. – describing the firm as having the "Northern Virginia **Consumer Protection** Attorney . . . standing up for the rights of consumers") (https://www.tbreedenlaw.com/).

- Consumer Law Group, LLC – describing the law firm as "one of the premier **consumer protection law firms** in Connecticut . . . we have served as an advocate and champion for the rights of consumers") (http://www.**consumerlawgroup.com**/).

- The Ferraro Law Firm, P.A. – describing the firm as "Florida **Consumer Protection** Lawyers ... [t]he trial lawyers at The Ferraro Law **Firm** have a proven track record of successfully taking on large companies" using "Florida law [that] provides legal protection for consumers" (https://www.ferrarolaw.com/product-liability/consumer-protection/).

- Law Offices of Brandon A Block – describing the law firm as "a California **consumer protection** and civil litigation law **firm** that sues banks, finance companies, debt collectors, repossession agencies and others for collection abuses, wrongful repossession and other unlawful business practices" (http://www.bblocklaw.com/).[14]

- Crowder McGaha, LLP – containing the description title "About **Our Consumer Protection Firm**" (https://www.crowdermcgaha.com/).

- Max Story Law – "We are a **consumer protection firm** litigating individual and class action lawsuits throughout Florida" (https://www.maxstorylaw.com/).

---

[13] Kelly & Crandall, PLLC, Marshall Law Firm and Francis & Mailman web pages provided with August 8, 2017 Office Action at TSDR 37-46.

[14] Law Office of Sean E. Underwood, Thomas R. Breeden, P.C., Consumer Law Group, LLC, The Ferraro Law Firm, P.A. and Law Offices of Brandon A Block web pages provided with March 6, 2018 Office Action at TSDR 8-22.

- Lyngklip & Associates Consumer Law Center, PLC – describing the law firm as "Michigan's leading **consumer protection firm**" (https://**michiganconsumerlaw.com**/).

- Charpentier Law – "If you suspect that you have been the victim of fraud, call on [our] **consumer protection firm**" (http://gatewaylawyers.com/st-louis-consumer-protection-lawyer/).

- Jeppson Law Office, LLC – describing the law firm as "**a consumer protection firm**. In short, we are here to help" (http://www.jeppsonlawoffice.com/about/).[15]

- The Gold Law Firm – Denver **Consumer Protection Law Firm**," listing **Consumer Protection**" as one of the firm's practice areas (https://www.thegoldlawfirm.net/denver-consumer-protection-law-firm/).

- The Goldson Law Office – listing **Consumer Protection** as one of the firm's areas of practice (http://www.goldsonlawoffice.com/consumer-protection/).

- Kazerouni Law Group – described as "A **Consumer Protection Law Firm**" and listing **Consumer Protection** as one of its practice areas (https://www.kazlg.com/www.kazlg.com/index.html).

- Flitter Milz, P.C. – described as practicing "**Consumer Protection Law**" (https://www.**consumerslaw.com**/).

- Williston Law Firm – described as a "**Consumer Protection Law Firm**" (https://willistonlawfirm.com/).

- DeLadurantey Law Office, LLC – described as "**A Consumer Protection Law Firm**" (http://dela-law.com/).[16]

Additionally, the Examining Attorney made of record three different lawyer search sites in which "**Consumer Protection**" can be used as a search term or "filter" allowing consumers seeking legal representation to search for lawyers and firms in that practice area:

---

[15] Crowder McGaha, LLP, Max Story Law, Lyngklip & Associates Consumer Law Center, PLC, Charpentier Law and Jeppson Law Office, LLC web pages provided with August 15, 2018 Office Action at TSDR 5-29.

[16] The Gold Law Firm, The Goldson Law Office, Kazerouni Law Group, Flitter Milz, P.C., Williston Law Firm and DeLadurantey Law Office, LLC web pages provided with March 7, 2019 Office Action at TSDR 7-32.

- Super Lawyers
(https://attorneys.superlawyers.com/consumer-
law/pennsylvania/philadelphia/).

- FindLaw
(https://lawyers.findlaw.com/lawyer/firm/consumer-
protection/independence/missouri).

- LawInfo
(https://attorneys.lawinfo.com/consumer-protection/maryland/waldorf/).[17]

### B.    Applicant's Evidence

In support of its contention that Applicant's Proposed Marks are not generic, Applicant made of record its own definition of "Firm" as meaning "a partnership of two or more persons that is not recognized as a legal person distinct from the members composing it" and "a business unit or enterprise." As with the Examining Attorney's definition, a "law firm" is one of the examples given.[18]

Applicant also made of record the following third-party registrations issued by the USPTO (registered on the Principal Register without a claim of acquired distinctiveness pursuant to Trademark Act Section 2(f), 15 U.S.C. § 1052(f), unless otherwise noted below):

| Mark | Reg. No. | Services |
|------|----------|----------|
| A LAW FIRM CENTERED ON THE CLIENT ("Law Firm" disclaimed) | 5,328,634 | Legal services in Class 45 |
| FOUR RIVERS LAW FIRM ("Law Firm" disclaimed) | 5,216,509 | Legal services in Class 45 |
| Bagla Law Your Business Law Firm ("Law" and "Your Business Law Firm" disclaimed) | 5,213,537 | Legal services in Class 45 |

---

[17] Super Lawyers, FindLaw and LawInfo web pages provided with March 7, 2019 Office Action at TSDR 33-48.

[18] Office Action Response of February 7, 2018 at TSDR 25-30.

| Mark | Reg. No. | Services |
|---|---|---|
| (The design of the State of Florida, "Government Law" and "Law Firm" disclaimed) | 5,167,774 | Legal services in Class 45 |
| A BRAND NAME LAW FIRM ("Law Firm" disclaimed, 2(f) claimed) | 5,117,062 | Legal services in Class 45 |
| ("Law Firm" disclaimed) | 5,099,800 | Real estate escrow services in Class 36; Legal services in Class 45 |
| SONGLAWFIRM | 4,988,567 | Legal services in Class 45 |
| THE ORIGINAL FATHERS RIGHTS LAW FIRM BUILT BY A FEMALE LAWYER ("The Original Fathers Rights Law Firm" disclaimed) | 4,990,102 | Legal services in Class 45 |
| ("Family Law Firm, P.L." disclaimed) | 4,962,773 | Legal services in Class 45 |
| THE BUSINESS OWNER'S LAW FIRM ("Law Firm" disclaimed) | 4,930,780 | Legal services in Class 45 |
| ("Telecom Law Firm PC" disclaimed) | 4,798,924 | Telecommunications consultation services in Class 38; Legal services in Class 45 |
| THE CONSUMER'S ADVOCATE ("Consumer's" disclaimed) | 4,481,278 | Educational and entertainment services in Class 41 |
| CONSUMER RIGHTS ALLIANCE ("Consumer Rights" disclaimed) | 3,810,232 | Legal services in Class 45 |
| NATIONAL CONSUMER ASSISTANCE PLAN (Supplemental Register) | 5,061,226 | Providing credit information to consumers; providing information relating to credit records for financial purposes in Class 36 |
| ASSET PROTECTION COUNCIL (Supplemental Register) | 5,102,187 | Providing a website featuring information in the fields of law including asset protection, estate planning, |

| Mark | Reg. No. | Services |
|---|---|---|
| | | trusts, taxes, and wealth management in Class 45 |
| THE FAMILY LAW FIRM ("Law Firm" disclaimed, Supplemental Register) | 5,229,806 | Legal services in Class 45 |
| INJURY LAW FIRM ("Law Firm" disclaimed, Supplemental Register) | 4,857,099 | Legal services in Class 45 |
| THE SMALL BUSINESS LAW FIRM ("Law Firm" disclaimed, Supplemental Register) | 4,394,187 | Legal services in Class 45 |
| ("A Business Law Firm L.L.C." disclaimed) | 4,699,588 | Legal services in Class 45 |
| ("The Real Estate Firm" disclaimed) | 5,354,516 | Real estate brokerage in Class 36 |
| ("Financial" disclaimed, Registration Canceled) | 3,061,088 | Real estate financing mortgage brokerage services in Class 36[19] |

Applicant also made of record the results of a GOOGLE search using the phrase "The Consumer Protection Firm," wherein the first two dozen results refer to Applicant and its lawyers.[20] Finally, Applicant submitted copies of the following articles featuring interviews with lawyers affiliated with Applicant:

- "Don't pick up (or maybe you should): That annoying robocall could be about your student loans" (CNBC, Feb. 8, 2018).
- "Documents: Ring preyed on women in parking lots, stole $143K" (NBC, Jun. 7, 2018).
- "Overwhelmed by Robocalls About Student Loans?" (BUSINESS INSIDER, Aug. 10, 2018).

---

[19] *Id.* at TSDR 37-53 and Office Action Response of February 11, 2019 at TSDR 32-41.

[20] Office Action Response of February 11, 2019 at TSDR 12-16.

- "Woman in lawsuit says Norfolk debt collector robocalled her 1,500 times" (SOUTHSIDE DAILY, Feb. 8, 2018).[21]

## III. Discussion and Analysis

### A. Applicant's Proposed Word Mark

As noted and found above, Applicant and the Examining Attorney agree on two aspects of the genericness test of *Marvin Ginn*, 228 USPQ at 530, as applied to these appeals. The genus of the services is "legal services" as defined in Applicant's identification of services. The relevant public consists of ordinary consumers of legal services. This leaves us to consider whether ordinary consumers of legal services understand THE CONSUMER PROTECTION FIRM primarily to refer to those services rather than a particular source of those services.

As Applicant urges multiple times,[22] we must "assess whether the public understands the mark, **as a whole**, to refer to [the] … genus" of the services at issue. *Princeton Vanguard*, 114 USPQ2d at 1831 (emphasis original). *See also Booking.com*, 2020 USPQ2d 10729, at *5 ("[F]or a compound term, the distinctiveness inquiry trains on the term's meaning as a whole, not its parts in isolation.") (citing *Estate of P. D. Beckwith, Inc. v. Comm'r of Patents*, 252 U. S. 538, 545-46 (1920)). We agree with Applicant's statement of the law.

However, "[a] compound of generic elements is [also] generic if the combination yields no additional meaning to consumers capable of distinguishing the goods or services." *Booking.com*, 2020 USPQ2d 10729, at *7. The U.S. Court of Appeals for the

---

[21] *Id.* at TSDR 17-31.

[22] Applicant's Brief, 4 TTABVUE 5, 8-11, 13.

Federal Circuit more specifically states on this point: "where the [proposed] mark in its entirety has exactly the same meaning as the individual words, … 'the [US]PTO has satisfied its evidentiary burden if … it produces evidence ... that the separate words joined to form a compound [or a phrase] have a meaning identical to the meaning common usage would ascribe to those words as a compound [or phrase].'" *Princeton Vanguard*, 114 USPQ2d at 1831-32 (citing *In re Gould Paper*, 5 USPQ2d at 1111-12, and noting that the genericness test for phrases is the same as for compound marks). Thus, we may consider the understood meanings of portions of Applicant's Proposed Word Mark as a step in the process towards our ultimate finding of whether the proposed mark, as a whole, is generic for Applicant's services.

The Examining Attorney has provided a plethora of explanatory uses of "consumer protection," "consumer protection firm" and "consumer protection law firm" by Applicant and competitor law firms that practice "consumer protection law." Applicant does not challenge the accuracy of the definitions and uses. Both Applicant and the Examining Attorney also submitted similar definitions of "firm," with a "law firm" noted as an example.

Applicant's principal argument is that the references made of record by the Examining Attorney do not show usage of the proposed mark "THE CONSUMER PROTECTION FIRM" as a whole.[23] Rather, Applicant contends, when the entire phrase **THE** CONSUMER PROTECTION FIRM (emphasis by Applicant) is searched

---

[23] Applicant's Brief, 4 TTABVUE 5, 8, 10, 11, 13; Applicant's Rebuttal Brief, 7 TTABVUE 3.

on the Internet, the search results point unmistakably to Applicant.[24] In short, Applicant's position rests on the notion that adding the definite article "THE" will make the difference in the understanding of ordinary consumers of legal services that THE CONSUMER PROTECTION FIRM primarily refers to the source of those services rather than the genus of the services themselves.

However, as noted by the Examining Attorney,[25] it is well settled that adding the definite article "the" to a generic term or phrase generally does not add any source-indicating significance or otherwise affect the term's or phrase's genericness. *See In re The Place Inc.*, 76 USPQ2d 1467, 1468 (TTAB 2005) (holding THE GREATEST BAR merely descriptive of restaurant and bar services; "the definite article THE . . . add[s] no source indicating significance to the mark as a whole"); *Conde Nast Publ'ns Inc. v. Redbook Publ'g Co.*, 217 USPQ 356, 357, 360 (TTAB 1983) (holding THE MAGAZINE FOR YOUNG WOMEN a "common descriptive or 'generic' name of a class or type of magazine" and incapable of indicating source; "[t]he fact that the slogan also includes the article 'The' is insignificant. This word cannot serve as an indication of origin, even if applicant's magazine were the only magazine for young women."); *In re The Comput. Store, Inc.*, 211 USPQ 72, 74-75 (TTAB 1981) ("[T]he significance of 'THE COMPUTER STORE' as a source indicator would not be of such a nature as to qualify for the grant of registration rights under the Trademark Act" for computer-related services. Applicant's contention that "'The' converts the

---

[24] Applicant's Brief, 4 TTABVUE 12, 13, 15; Applicant's Rebuttal Brief, 7 TTABVUE 4, 5.

[25] Examining Attorney's Brief, 6 TTABVUE 10.

merely descriptive term into a registrable service mark … is strained"); *In re G.D. Searle & Co.*, 143 USPQ 220, 222–23 (TTAB 1966), *aff'd,* 360 F.2d 650, 149 USPQ 619, 623 (CCPA) ("[U]tilization of the article 'the' and of quotation marks cannot convert a simple notation comprising ordinary words of the English language used in their ordinary sense into a registrable trademark").

Further, the evidence provided by Applicant does not support its position. Applicant's GOOGLE search results on "the consumer protection firm"[26] direct the user to Applicant's web site, FACEBOOK page, LINKEDIN references, INSTAGRAM postings, White Page and Yellow Page listings, BETTER BUSINESS BUREAU rating, third-party law firm and lawyer reviews of Applicant, interviews of Applicant's lawyers with the media and its pending service mark applications. These search results speak less to the source-identifying significance of THE CONSUMER PROTECTION FIRM than to efforts by Applicant's lawyers to make their law firm visible in social media and elsewhere on the Internet, to compete with other "consumer protection law firms." Applicant made no evidence of record to support the premise that THE CONSUMER PROTECTION FIRM functions as a service mark simply because it appears higher within a list of GOOGLE search results. We are not privy to GOOGLE's page ranking algorithm, and we cannot simply assume that the order of appearance in search results is an indicator of the trademark significance of Applicant's Proposed Marks.

---

[26] Office Action Response of February 11, 2019 at TSDR 12-16.

Moreover, the references to THE CONSUMER PROTECTION FIRM in interviews of Applicant's lawyers in news articles[27] do not necessarily demonstrate that ordinary consumers of legal services primarily understand Applicant's Proposed Marks to refer to the source of those services. The nature of these references to THE CONSUMER PROTECTION FIRM in the news articles merely demonstrates that the reporters of these articles are reprinting the name provided by the lawyers, e.g., from the lawyers' business cards, as part of their reporting. Journalists in reporting their interviews with Applicant's attorneys naturally would use their firm's name (although generic), because that is how Applicant refers to itself. Thus, while media articles generally can be persuasive evidence of consumer perception, in this case the articles do not show non-genericness.

In any event none of this evidence assists Applicant, because "no matter how much money and effort the user of a generic term has poured into promoting the sale of its [service] ..., it cannot deprive competing [providers] … of the [service] … of the right to call [a service] by its name." *Booking.com*, 2020 USPQ2d 10729, at \*7 (quoting *Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4, 189 USPQ 759, 764 (2d Cir. 1976)); *see also Fluid Energy Processing & Equip. Co. v. Fluid Energy, Inc.*, 212 USPQ 28, 35-36 (TTAB 1981) (citing *In re Deister Concentrator Co., Inc.*, 129 USPQ 314, 322 (CCPA 1961)) ("Although a party may acquire common law or statutory rights in a descriptive term if it has acquired a secondary meaning signifying a single source, a generic term cannot be exclusively appropriated as a common law

---

[27] Office Action Response of February 11, 2019 at TSDR 17-31.

trademark or as a statutory trademark, regardless of its length of use and promotion.").[28]

By contrast, the Examining Attorney's evidence shows use by three different organizations, Super Lawyers, FindLaw and LawInfo, in which "**Consumer Protection**" is provided as a "filter" by category of law that consumers can use to narrow their search for attorneys and law firms that practice in this area of the law.[29] In our view, this is the most direct evidence in the record demonstrating an understanding by ordinary consumers of legal services that "CONSUMER PROTECTION" is a category of legal practice in which some lawyers and law firms specialize. *See In re Reed Elsevier Props.*, 82 USPQ2d at 1380 (Generic nature of LAWYERS.COM "is amply demonstrated by the ubiquitous nature of the 'search for lawyers' and 'find a lawyer' functions both on web pages providing information about

---

[28] Moreover, a list of Internet search results generally has little probative value, because such a list does not show the context in which the term is used on the listed web pages. *See In re Bayer AG*, 488 F.3d 960, 82 USPQ2d 1828, 1833 (Fed. Cir. 2007) (deeming GOOGLE search results that provided very little context of the use of ASPIRINA to be "of little value in assessing the consumer public perception of the ASPIRINA mark"). Notwithstanding, both the Examining Attorney and Applicant introduced Internet search results into the record (Office Action of March 6, 2018 at TSDR 6-7; Office Action Response of February 11, 2019 at TSDR 12-16; Office Action of March 7, 2019 at TSDR 33-37) – without objection from the other. Although it may not be appropriate in other cases, here the search results, which we consider only for what they show on their face, *Safer, Inc. v. OMS Invs., Inc.*, 94 USPQ2d 1031, 1039 (TTAB 2010) (Documents obtained from the Internet normally are accepted "for the limited purpose of demonstrating what the documents show on their face."), provide sufficient context such that we afford this evidence a modicum of probative value regarding the positions for which they were cited. *In re Hotels.com L.P.*, 87 USPQ2d 1100, 1105 n.7 (TTAB 2008) (although websites referenced in summary format, sufficient information was included in the summary to understand the context of usage), *aff'd*, 573 F.3d 1300, 91 USPQ2d 1532 (Fed. Cir. 2009).

[29] Office Action of March 7, 2019 at TSDR 33-48.

legal services generally and on pages providing information about specific legal practice areas.").

Applicant also relies upon third-party service mark registrations of purportedly "similar marks … without finding that such marks are generic …."[30] However, many of these registered marks present dissimilar circumstances, such as those that include design elements, or have the relevant wording disclaimed. Regardless, the fact that third-party registrations exist for marks allegedly similar to Applicant's Proposed Marks is not conclusive on the issue of descriptiveness or genericness. *See In re Nett Designs, Inc.*, 236 F.3d 1339, 57 USPQ2d 1564, 1566 (Fed. Cir. 2001) ("Even if some prior registrations had some characteristics similar to … [Applicant's mark], the [US]PTO's allowance of such prior registrations does not bind the Board or … [the Federal Circuit]."). Marks that are merely descriptive or generic do not become registrable simply because other seemingly similar marks appear on the register. *In re Scholastic Testing Serv., Inc.*, 196 USPQ 517, 519 (TTAB 1977).

The question of whether a proposed mark is merely descriptive or generic is determined based on the evidence of record at the time each registration is sought. *In re the Dot Commc'ns Network LLC*, 101 USPQ2d 1062, 1064 (TTAB 2011). Each case must be decided on its own facts, and the Board is not bound by prior decisions involving different records. *See In re Datapipe, Inc.*, 111 USPQ2d 1330, 1336 (TTAB 2014) ("Although the United States Patent and Trademark Office strives for

---

[30] Office Action Response of February 7, 2018 at TSDR 37-53; Office Action Response of February 11, 2019 at TSDR 32-41; Applicant's Brief, 4 TTABVUE 14-15; Applicant's Rebuttal Brief, 7 TTABVUE 6.

consistency, each application must be examined on its own merits. Neither the Trademark Examining Attorney nor the Board is bound to approve for registration an Applicant's mark based solely upon the registration of other assertedly similar marks for other goods or services having unique evidentiary records.").

Evaluating the record as a whole, we find that the Examining Attorney has proven that Applicant's Proposed Word Mark "THE CONSUMER PROTECTION FIRM" refers to a "class or category" of "legal services," namely, legal services concerning the laws related to consumer protection, and is understood by the relevant public primarily to refer to that subgenus of legal services. Based on this record, we have no doubt as to the question of genericness of this proposed mark. We therefore affirm the finding of genericness for Applicant's Proposed Word Mark.

### B. Applicant's Proposed Word-and-Design Mark

This brings us to the issues unique to Applicant's Proposed Word-and-Design Mark, which is the subject of the '846 Application. In addition to the generic wording "THE CONSUMER PROTECTION FIRM" from Applicant's Proposed Word Mark, Applicant's Proposed Word-and-Design Mark includes the addition of the generic top level domain ("gTLD") ".COM," stylization, color, vertical word stacking, and a square design element.

As we noted at the beginning of this decision, Applicant disclaimed FIRM.COM on the Supplemental Register and therefore has conceded it is generic. *In re Volvo White Truck Corp.*, 16 USPQ2d 1417, 1420 (TTAB 1990) ("Applicant has … conceded that the generic term for an over-the-highway tractor equipped with sleeping

compartment is "sleeper", and has disclaimed that term."); *see also* TRADEMARK MANUAL OF EXAMINING PROCEDURE (TMEP) § 1213.03(b) (October 2018) ("If a mark is comprised in part of matter that, as applied to the … services, is generic …, the matter must be disclaimed to permit registration on … the Supplemental Register.").

Even though we found above that the wording THE CONSUMER PROTECTION FIRM is generic, and Applicant has disclaimed FIRM.COM, we still must make our determination regarding the Word-and-Design Mark as a whole. This includes considering the literal elements and the design elements taken together. As we discuss in greater detail below, the Examining Attorney did not make evidence of record that Applicant's Word-and-Design Mark as a whole is generic for Applicant's legal services.

Relying on the various design elements in support of registration, Applicant argues:

> Applicant's [Proposed Word-and-Design Mark] … includes word elements having a particular placement relative to one another in that Applicant's word elements are left justified and vertically aligned one on top of the other. The word elements of Applicant's mark are entirely enclosed by a blue square where color is claimed as part of the mark. Each word alternates in color from green, to blue, to red, to green again. The last line includes the text "Firm.com" with "Firm" in green and ".com" in yellow. … [T]he commercial impression conveyed by the mark as a whole … must necessarily account for the placement of the word elements relative to one another and within the square as well as the colors of the design. … Applicant's mark includes multiple design elements that convey a distinct commercial impression. There is simply no way that a consumer viewing the design would consider it to be generic for a particular genus of goods or service, and the design elements of Applicant's mark cannot be so easily dismissed.[31]

---

[31] Applicant's Brief regarding the '846 Application, 4 TTABVUE 17.

As noted, Applicant's Word-and-Design Mark includes stylized wording identical to the generic wording in Applicant's Proposed Word Mark with the addition of the gTLD ".COM." We therefore must consider the impact of the Supreme Court's recent decision in *Booking.com*. There, the Court held that "[w]hether any given 'generic.com' term[32] is generic … depends on whether consumers in fact perceive that term as the name of a class or, instead, as a term capable of distinguishing among members of the class." *Booking.com*, 2020 USPQ2d 10729, at *7. In so holding, the Court rejected a categorical rule that combining a generic term with the gTLD ".COM" automatically yields a generic composite. *Id.* at *8-9. By this approach, although noting Booking.com B.V.'s concessions that BOOKING.COM was descriptive, weak and difficult to enforce as a mark, *id.* at *8, the Court observed the determinations made by the lower tribunals that consumers do not perceive the term, taken as a whole, signals a class or category of online hotel-reservation services. In the Court's words: "[t]hat should resolve this case: Because 'Booking.com' is not a generic name to consumers, it is not generic." *Id.* at *5.

As we found above, the Examining Attorney has established that the relevant public understands the wording THE CONSUMER PROTECTION FIRM refers to legal services concerning the laws related to consumer protection. With respect to the Word-and-Design Mark, Applicant accepted a disclaimer of the generic matter

---

[32] We understand the Court's use of the term "generic.com" to mean a domain name address on the Internet sought for protection as a mark that comprises: (i) a generic term or terms as the leftmost component, which is the second-level name, and (ii) a rightmost component which is the top-level domain (i.e., ".COM"). *See Booking.com*, 2020 USPQ2d 10729, at *4 n.1.

FIRM.COM on the Supplemental Register, and did not preserve that question for appeal (or request remand on that issue). That FIRM.COM is generic with respect to Applicant's services is no longer in question and we take it as generic. Moreover, the record as a whole, including generic use of very similar terms as second level domain names by third-party competitors,[33] supports a finding that "THE CONSUMER PROTECTION FIRM.COM" is incapable of designating a single source of consumer protection legal services.

However, the Examining Attorney only relied on an argument that "the addition of the gTLD [.COM] does not create a witty double entendre or add any other significance capable of identifying source or acquiring distinctiveness."[34] The Examining Attorney did not provide evidence showing that the design elements (i.e., the combination of stylization, colors, vertical word stacking, and square border) are so common as to be incapable of protection; thus, there is insufficient evidence that, together, the combined elements of Applicant's Proposed Word-and-Design Mark are generic and incapable of identifying Applicant as the source of its services.

To refuse registration on the Supplemental Register, we must have evidence in the record supporting a finding that the proposed mark **as a whole** would be perceived as incapable of functioning as a mark. In the absence of sufficient evidence demonstrating that the composite mark is incapable of identifying the source of

---

[33] *See* the URLs https://www.consumerlawfirm.com/, http://www.consumerlawgroup.com/, https://michiganconsumerlaw.com/ and https://www.consumerslaw.com/, set out above, provided with the Office Actions of August 8, 2017 (at TSDR 45-46), March 6, 2018 (at TSDR 10-15), August 15, 2018 (at TSDR 18-24) and March 7, 2019 (at TSDR 19-21).

[34] Examining Attorney's Brief, 6 TTABVUE 11.

Applicant's services, we are constrained to find that the Examining Attorney failed to show that the mark as a whole is generic. *In re Haden,* 2019 USPQ2d 467424, at *6 (TTAB 2019) ("On this record, we cannot say that the combination of colors, borders, and stylization found in Applicant's mark are commonly used or so lacking in creativity that it could never serve to distinguish Applicant's services from similar services offered by others. We thus find that the combination of colors, borders, and stylization in Applicant's Proposed Word-and-Design Mark are capable of distinguishing the source of Applicant's services.").

## IV. Summary

In these appeals, the evidentiary record contains numerous generic uses of "consumer protection," "consumer protection firm" and "consumer protection law firm" by Applicant, competitor law firms that practice in the area of consumer protection law, and online attorney search engines – all of which readily use the wording to refer to a category of legal services. Applicant's evidence does not rebut the evidentiary showing made by the Examining Attorney.

While the record thus shows that Applicant's Proposed Word Mark (i.e., THE CONSUMER PROTECTION FIRM) is generic for Applicant's services, and the literal portion of Applicant's Proposed Word-and-Design Mark (i.e., THE CONSUMER PROTECTION FIRM.COM) is generic, the same cannot be said of Applicant's Proposed Word-and-Design Mark (i.e., "THE CONSUMER PROTECTION FIRM.COM & Design") as a whole. The record lacks sufficient evidence to support a finding that Applicant's Proposed Word-and-Design Mark, taken as a whole, is incapable of designating the source of Applicant's services. However, in view of our

findings on the literal elements of Applicant's Proposed Word-and-Design Mark, it cannot register absent a disclaimer of the wording "THE CONSUMER PROTECTION FIRM.COM." *In re Haden,* 2019 USPQ2d 467424, at *5-7 (TTAB 2019).

**Decision**

We affirm the refusal to register on the Supplemental Register Applicant's Proposed Word Mark, THE CONSUMER PROTECTION FIRM, the subject of Application Serial No. 87445801, on the ground that it is generic for Applicant's services.

We affirm the refusal to register on the Supplemental Register Applicant's Proposed Word-and-Design Mark, THE CONSUMER PROTECTION FIRM.COM & Design, , the subject of Application Serial No. 87444846, in the absence of the entry of a disclaimer of "THE CONSUMER PROTECTION FIRM.COM." However, if Applicant submits a properly worded disclaimer to the Board within 30 days from the date of this decision, the requirement for the disclaimer will have been met. Trademark Rule 2.142(g), 37 C.F.R. § 2.142(g). The disclaimer should read as follows: "No claim is made to the exclusive right to use 'THE CONSUMER PROTECTION FIRM.COM' apart from the mark as shown." TMEP § 1213.08(a)(i).